IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

_____

CYNTHIA BROOKINS,

     Plaintiff,

v.

PETER P. BUTTIGIEG, U.S.
SECRETARY OF TRANSPORTATION,

    Defendant.

Civil Action No. 4:23-cv-00744-P

**DEFENDANT'S BRIEF IN SUPPORT OF ITS
SUMMARY-JUDGMENT MOTION**

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

*/s/  Andrea Hyatt*
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Phone: 817.252.5200
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

# Table of Contents

I.    Introduction.......................................................................................................1

II.   Facts ..................................................................................................................2

    A.    Brookins joins the FAA's MIDO office in 2015. ...........................................2

    B.    Brookins' former co-worker allegedly harasses her, based on her age, during her first year of employment.......................................................4

    C.    Brookins' former supervisor, Cochran, allegedly harasses her, based on her age, during the seven years she worked in the MIDO........................5

        1.    Brookins' supervisor allegedly makes five ageist comments over seven years. ..................................................................................7

            a.    Cochran allegedly said, the "FAA doesn't like hiring old people." ................................................................................7

            b.    Cochran asks Brookins about her retirement plans. ................8

    D.    After Brookins leaves the MIDO, her former supervisor sends her two, facially neutral text messages...................................................................9

    E.    After she leaves the MIDO, Brookins contacts an EEO counselor. ............11

    F.    The FAA investigates Brookins' claims and issues a Final Agency Decision. ......................................................................................................11

III.  Procedural Context ........................................................................................12

IV.   Summary-Judgment Standard .......................................................................12

V.    Argument and Authorities .............................................................................14

    A.    Brookins' retaliation claim fails as a matter of law for three, independent reasons.....................................................................................14

        1.    Brookins recanted her retaliation claim during her deposition. .......14

        2.    Alternatively, Brookins' retaliation claim is barred because she failed to exhaust her administrative remedies on that claim. ................................................................................................15

3.    Finally, Brookins' retaliation claim fails on the merits. ................... 17

B.    Brookins' disparate-treatment claim — that her former supervisor provided a negative employment reference — fails because it's based on nothing more than her mistaken assumption. .............................. 19

C.    Brookins' two hostile-work-environment claims fail as a matter of law. ..................................................................................................... 21

1.    Brookins' hostile-work-environment claims are barred .................. 21

a.    Brookins' co-worker harassment claim is barred because she failed to timely exhaust her administrative remedies on that claim. ........................................................ 21

b.    Brookins' harassment claim against her supervisor is barred by the *Faragher/Ellerth* affirmative defense. ............ 21

2.    Alternatively, Brookins' hostile-work-environment claims fail on the merits. ...................................................................... 25

a.    Brookins has no evidence of the second element — that she was subjected to harassment based on her age. ....... 26

b.    Brookins has no evidence of the third element because none of the actions she complains of were objectively intimidating, hostile, or offensive. ......................................... 29

D.    The FAA should be granted summary judgment on Brookins' claims for damages. .................................................................................. 34

1.    Brookins cannot recover punitive damages or emotional-distress damages under the ADEA. .................................................. 34

2.    Brookins cannot recover damages for front pay because she has no such damages. ...................................................................... 35

3.    Brookins cannot recover for damages caused by "inconvenience" under the ADEA. ..................................................... 35

4.    Brookins cannot recover attorney's fees under the ADEA. ............. 36

VI.   Conclusion ...................................................................................... 36

# Table of Authorities

## CASES

*Alaniz v. Zamora-Quezada,*
591 F.3d 761 (5th Cir. 2009) ................................................................. 30

*Anderson v. Liberty Lobby, Inc.,*
477 U.S. 242 (1986) ............................................................................. 13

*Badgerow v. REJ Props.,*
974 F.3d 610 (5th Cir. 2020) ................................................................. 26

*Barrett v. Applied Radiant Energy Corp.,*
240 F.3d 262 (4th Cir. 2001) ................................................................. 24

*Boehms v. Crowell,*
139 F.3d 452 (5th Cir. 1998) ................................................................. 36

*Briseno v. McDaniel,*
2004 WL 2203255 (N.D. Tex. Sept. 30, 2004) ...................................... 25

*Brown v. Gen. Servs. Admin.,*
425 U.S. 820 (1976) ............................................................................. 15

*Buchanan v. Exxon Mobil Corp.,*
2006 WL 492605 (S.D. Tex. Mar. 1, 2006) ........................................... 33

*Burlington Indus. v. Ellerth,*
524 U.S. 742 (1998) ............................................................................. 22

*Bye v. MGM Resorts Int'l,*
49 F.4th 918 (5th Cir. 2022), *cert. dismissed*, 143 S. Ct. 1002 (2023) ..................... 26, 29, 36

*Celotex Corp. v. Catrett,*
477 U.S. 317 (1986) ............................................................................. 12

*Cherry v. CCA Props.,*
438 F. App'x 348 (5th Cir. 2011) .......................................................... 26

*Daywalker v. UTMB,*
2024 WL 94297 (5th Cir. Feb. 19, 2024) .............................................. 33

*Dediol v. Best Chevrolet, Inc.,*
655 F.3d 435 (5th Cir. 2011) ...................................................... 25, 30, 33

*Dobson v. Alvarez,*
1999 WL 134371 (N.D. Tex. Mar. 10, 1999) ......................................... 16

*Faragher v. City of Boca Raton,*
524 U.S. 775 (1998) ...................................................................... 22, 23, 29

*Fontenot v. Upjohn Co.*,
 780 F.2d 1190 (5th Cir. 1986) ............................................................. 13

*Frank v. Xerox Corp.*,
 347 F.3d 130 (5th Cir. 2003) ............................................................... 26

*Giddens v. Cmty. Educ. Ctrs.*,
 540 F. App'x 381 (5th Cir. 2013) .............................................. 22, 23, 24

*Hancock v. Barron Builders & Mgmt.*,
 523 F. Supp. 2d 571 (5th Cir. 2007) ............................................... 29, 31

*Harper v. City of Jackson Mun. Sch. Dist.*,
 414 F. Supp. 2d 595 (S.D. Miss. 2005) ................................................. 24

*Harris v. Forklift Sys., Inc.*,
 510 U.S. 17 (1993) ............................................................................... 25

*Holmes v. N. Tex. Care Laundry Coop.*,
 304 F. Supp. 3d 525 (N.D. Tex. 2018) ................................................. 22

*Honeycutt v. Long*,
 861 F.2d 1346 (5th Cir. 1988) ................................................................ 1

*January v. City of Huntsville*,
 74 F.4th 646 (5th Cir. 2023) ................................................................ 17

*Johnson v. Brennan*,
 2017 WL 5672692 (S.D. Tex. Nov. 27, 2017) ....................................... 33

*Jones v. Gulf Coast Rest. Grp.*,
 8 F.4th 363 (5th Cir. 2021) .................................................................. 26

*Jones v. U.S.*,
 936 F.3d 318 (5th Cir. 2019) .......................................................... 13, 19

*King v. Napolitano*,
 2010 WL 11618677 (N.D. Tex. Nov. 1, 2022) ...................................... 16

*Lauderdale v. Tex. Dep't of Crim. Just.*,
 512 F.3d 157 (5th Cir. 2007) ............................................................... 29

*Leal v. McHugh*,
 731 F.3d 405 (5th Cir. 2013) .......................................................... 19, 35

*Lehman v. Nakshian*,
 453 U.S. 156 (1981) ............................................................................. 12

*Lindsey v. Am. Airlines, Inc.*,
 2023 WL 5807015 (N.D. Tex. Sept. 7, 2023) .................................. 27, 36

*Martin v. Alamo Cmty. Coll. Dist.*,
 353 F.3d 409 (5th Cir. 2003) ............................................................... 13

*Meritor Savings Bank v. Vinson*,
    477 U.S. 57 (1986) ............................................................................................... 25

*Montgomery-Smith v. George*,
    810 F. App'x 252 (5th Cir. 2020) ........................................................................ 29

*Moody v. U.S. Sec'y of Army*,
    72 F. App'x 235 (5th Cir. 2003) .......................................................................... 33

*Price v. Valvoline, L.L.C.*,
    88 F.4th 1062 (5th Cir. 2023) .............................................................................. 26

*Ragas v. Tenn. Gas Pipeline Co.*,
    136 F.3d 455 (5th Cir. 1998) ............................................................................... 12

*Randel v. U.S. Dep't of the Navy*,
    157 F.3d 392 (5th Cir. 1998) ............................................................................... 15

*Ray v. Freeman*,
    626 F.2d 439 (5th Cir. 1980) ............................................................................... 15

*Read v. BT Alex Brown, Inc.*,
    72 F. App'x 112 (5th Cir. 2003) .......................................................................... 30

*Shaw v. AutoZone, Inc.*,
    180 F.3d 806 (7th Cir. 1999) ............................................................................... 24

*Shepherd v. Comptroller of Pub. Accounts*,
    168 F.3d 871 (5th Cir. 1999) ........................................................................ 26, 29

*Smith v. Office of Pers. Mgmt.*,
    778 F.2d 258 (5th Cir. 1985) ............................................................................... 35

*Tolbert v. U.S.*,
    916 F.2d 245 (5th Cir. 1990) ............................................................................... 15

*Walker v. Sears, Roebuck & Co.*,
    853 F.2d 355 (5th Cir. 1988) ............................................................................... 13

*Wilbourn v. BRG Sports, Inc.*,
    569 F. Supp. 3d 445 (N.D. Tex. 2021) ............................................................... 13

## Statutes

29 U.S.C. § 633a .................................................................................... 14, 15, 20

## Rules

Fed. R. Civ. P. 56(a) ...................................................................................... 12, 13

## Regulations

29 C.F.R. § 1614.105(a)(1) .................................................................................. 21

## SECONDARY SOURCES

James Wm. Moore et al., MOORE'S FEDERAL PRACTICE – CIVIL § 56.02 (3d ed. 2024) ............ 13

## I.        Introduction

This age-discrimination employment case—filed by an employee of the Federal Aviation Administration (FAA)—should be summarily dismissed. None of the claims Plaintiff Cynthia Brookins asserts in her complaint are viable, and even if they were, the damages she seeks are unavailable.

Brookins complains about events that allegedly occurred while she worked for the FAA in its Flight Standards, Manufacturing Inspection Office (MIDO) office in Fort Worth from 2015 to 2022. During those seven years, she received favorable performance reviews every year, regular merit raises, frequent cash awards, an award of two-weeks' paid vacation, and two promotions. She was never disciplined, reprimanded, suspended, or dismissed. In fact, she stills works for the FAA, in a new, higher-paid role at a different location.

Nevertheless, Brookins seeks damages from the FAA[1] based on her allegation that two FAA employees at times made the office's work environment unpleasant. One of those employees is her former co-worker, who allegedly treated her rudely while training her during her first year. But the "main culprit," as she calls him, is her former supervisor. He wasn't always bad, but he was moody, and when he was in a bad mood, he was a jerk—gossiping, fomenting office drama, and treating Brookins in a dismissive and demeaning manner. Allegedly, he once pressured her into helping him cheat on an interview for a promotion. And on five occasions, he allegedly made age-related comments: he once opined that the FAA did not like hiring older workers, and four

---

[1] For federal employees suing for employment discrimination, "the appropriate defendant to be sued under the ADEA is . . . 'the head of the department, agency, or unit," in this case, Secretary Buttigieg. *See Honeycutt v. Long*, 861 F.2d 1346, 1349 (5th Cir. 1988). For convenience, clarity, and brevity, however, this Brief refers to the Secretary as "the FAA."

times, he asked about her retirement plans. Brookins also believes (mistakenly) that he once provided a negative employment reference to a prospective employer.

Based on those events, Brookins asserts three claims under the Age Discrimination in Employment Act (ADEA): for retaliation, hostile-work environment, and disparate treatment. Those claims lack merit, and her claims for damages are equally defective. Therefore, and for the reasons further explained below, the Court should summary judgment in favor of the FAA.

## II.      Facts[2]

Cynthia Brookins is a 65-year-old administrative employee at the FAA.[3] In her complaint, she asserts three claims under the federal Age Discrimination and Employment Act: (1) hostile work environment; (2) disparate treatment; and (3) retaliation.[4]

### A.      Brookins joins the FAA's MIDO office in 2015.

The FAA hired Brookins (then age 56) as an Aircraft Certification Assistant in its Fort Worth Manufacturing Inspection District Office (MIDO).[5] She started working at the MIDO on April 19, 2015.[6] This lawsuit is based on events she alleged occurred during the next seven years

---

[2] As required by Local Rule 56.6, this motion is supported by an appendix: Defendant's Appendix in Support of its Motion for Summary Judgment ("App"). The facts in this background section are based on the record evidence cited in the Appendix, resolving all reasonable doubts and drawing all reasonable inferences in the light most favorable to the non-movant, here Brookins. *See infra* Part IV.

[3] Compl. ¶ 5; App. 34:1-4; App. 27 (Answer to Interrog. No. 16); App. 175.

[4] Pl.'s First Am. Compl. & Jury Demand, ECF No. 10 (Compl.) 8.

[5] App. 34:1-2; App. 174.

[6] App. 174.

that she worked in that office.[7] She left the office in April 2022 when the FAA promoted her to a new, higher-paying role in a different location.[8]

According to Brookins, the seven years she spent in the MIDO were a mixed bag. "I have had some positive/good experiences," she later wrote.[9] On the positive side:

- Every year, her supervisor gave her "excellent performance evaluations."[10]

- She received regular merit-pay increases.[11]

- Her supervisor gave her cash awards "all the time," including in 2016, 2018, 2019, and 2020.[12]

- Her supervisor awarded her a "Time Off Award" in 2017, which granted her two additional weeks of paid leave.[13]

- She was never disciplined, reprimanded, written up, or admonished.[14]

- She received two promotions — one in May 2020 and the second in March 2022 (when she was promoted out of the MIDO).[15]

---

[7] Compl. ¶¶ 8-26.

[8] In her new role as Management & Program Assistant, Brookins no longer works at the MIDO in Fort Worth; rather, she works at the DFW Certificate Management Office in Irving Texas. App. 175. The effective date for her promotion was March 13, 2022. App. 175. However, to arrange for a smooth transition, she kept working in the MIDO for approximately one month after the effective date of her promotion. App. 46:18-19.

[9] App. 146 ¶66.

[10] App. 62:5-8; Compl. ¶ 32.

[11] Compl. ¶ 32.

[12] App. 62:15—63:6; 83; 84; 82; 87.

[13] App. 63:17—64:11 & 83.

[14] Compl. ¶ 32.

[15] App. 78:8-11; 86; 175.

On the negative side, she alleges that two employees at times created a hostile work environment within the MIDO.[16] Their motive for doing so, she suspects, is her age.[17] She'd just turned 56 when she started working at the MIDO, and they were both turning 47 later that year.[18]

**B.    Brookins' former co-worker allegedly harasses her, based on her age, during her first year of employment.**

Herbert ("Jay") Johnson trained Brookins during her first year on the job (from April 2015 through June 2016).[19] According to Brookins, he rushed her through the training, without letting her take notes and without slowing down, even when she asked.[20] Although he never made age-related comments to her or rude comments about older people in general,[21] Brookins suspected he "was frustrated at having to train [her] given her age."[22] After the rushed training, he had an assigned work area next to Brookins.[23] When she would ask him for help, Johnson would allegedly "flat ignore her and pretend he didn't hear her or harshly point to a training manual and advise her to figure it out and to 'learn [her] job.'"[24] In addition, according to Brookins, Johnson treated her

---

[16] Compl. ¶¶ 9-26.

[17] Compl. ¶ 35.

[18] App. 34:1-2; App. 174; App. 147 ¶ 5 (Cochran DOB); App. 158 ¶ 5 (Johnson DOB).

[19] Compl. ¶¶ 10-11.

[20] Compl. ¶ 10.

[21] App. 41:2-4; App. 43:3-12.

[22] Compl. ¶ 10.

[23] Compl. ¶ 11.

[24] Compl. ¶ 11.

rudely: he would "regularly make remarks to other co-workers about [her], roll his eyes when he saw her and speak to her in a condescending manner."[25] The alleged mistreatment ceased in June 2016, when Johnson left the MIDO for another position with the FAA.[26]

Despite the alleged mistreatment, after Johnson's departure, Brookins and Johnson became friends and routinely socialized outside work.[27] At work, Brookins continued to reach out to him for help learning certain tasks, long after he left the MIDO and even after working hours.[28] Perhaps their friendship explains why, during her deposition, Brookins clarified that Johnson was not the primary target in this suit: "I had brush-ins with Herbert Johnson, but the main culprit for me is Carlton Cochran."[29]

**C.    Brookins' former supervisor, Cochran, allegedly harasses her, based on her age, during the seven years she worked in the MIDO.**

As Brookins explained it, "The person that affected me the most, that I spent my — most of my time with is Carlton."[30] Carlton Cochran served as the Manager of the MIDO office.[31] According to Brookins, "Sometime he was nice, sometime he wasn't. It was just a roller coaster with him."[32] "[H]e wasn't always bad," but when he was a bad mood, he acted like a jerk:[33]

---

[25] Comp. ¶ 11.

[26] Compl. ¶ 10; App. 131 ¶ 11; App. 132 ¶ 17(a) & (c).

[27] App. 38:24-25; App. 163 ¶ 9.

[28] App. 163 ¶ 9.

[29] App. 40:6-8.

[30] App. 66:8-9.

[31] Compl. ¶ 9.

[32] App. 66:10-11.

[33] App. 58:22.

- He "was frequently dismissive [of] Plaintiff and would respond to inquiries with 'duh.'"[34]

- He "would often gossip with subordinates about [her]."[35]

- He tried to pit Brookins and her female co-worker against each other by fomenting office gossip and drama.[36] (His efforts failed. Brookins and her co-worker formed "a solid friendship and workplace bond."[37])

- In 2019, he allegedly pressured Brookins into helping him get an unfair advantage during interviews for a promotion. Namely, he persuaded Brookins to secretly obtain a copy of another candidate's interview notes for him, so that he would have the advantage of knowing the interview questions in advance.[38]

- In 2022, Brookins was in the running for a new job with the FDIC. She didn't get it. She assumed, mistakenly, that she didn't get the job because Cochran must've provided a negative employment reference to the FDIC.[39]

- In 2022, during one of her last days in the office, Cochran sent Brookins a Teams instant message that she suspected was intended to "rub it in" that he wanted to hire her replacement at a higher step level.[40]

- Finally, Cochran made her transition to her new role, during her last month in the MIDO, "horrible."[41] During a conference call where she shared plans for her transition, Carlton cut her off, and then, when a colleague began complimenting Brookins on her service, "Carlton cut the guy off."[42]

---

[34] Compl. ¶ 14.

[35] Compl. ¶ 14.

[36] Compl. ¶ 14.

[37] Compl. ¶ 14.

[38] Compl. ¶¶ 15-20.

[39] Compl. ¶ 22.

[40] App. 71:1-5.

[41] App 58:24-25.

[42] App. 141 ¶ 44.

Even though his alleged actions do not appear to have anything to do with Brookins' age, she contends Cochran was motivated by ageism.[43]

### 1.    Brookins' supervisor allegedly makes five ageist comments over seven years.

#### a.    Cochran allegedly said, the "FAA doesn't like hiring old people."

On July 31, 2018, Brookins came to Cochran to express her disappointment after a job-shadowing opportunity she'd wanted didn't materialize.[44] She felt "really burned out about it" and wanted someone to talk to.[45] Although Cochran did listen to and sympathize with her, he also allegedly made an offensive comment.[46] Namely, he allegedly told her, "[W]ell, Cynthia, you know, the — the folks at the FAA don't really like hiring older folks because they're not as innovative" or "tech savvy" and "they don't pick up as well, as quick as the younger folks."[47] Brookins responded, "[W]ow, Carlton that was really mean to say."[48] He allegedly responded, "[W]ell, it's true."[49] Brookins describes his alleged remark as his personal opinion — as she later put it, he'd told her "how the FAA views older employees *according to him*."[50] She knew from first-hand experience that whatever he may have subjectively believed the FAA's views to be, Cochran had hired and promoted older people: he'd hired her when she was 56, and helped

---

[43] Compl. ¶ 35.

[44] Compl. ¶ 13; App. 47:6-24.

[45] App. 47:20-24.

[46] App. 47:24—48:6.

[47] App. 47:24—48:6.

[48] App. 48:8-9.

[49] App. 48:10.

[50] App. 122 (emphasis added).

promote her when she was 61.[51] It's undisputed Carlton never did anything to deny her a promotion within the FAA.[52]

### b.    Cochran asks Brookins about her retirement plans.

Four times during the seven years she worked in the MIDO, Cochran allegedly asked Brookins about her retirement plans.[53] He'd bring up the topic of retirement during casual conversations, while he and Brookins were "just talking in his office or something."[54] While observing that neither of them were "getting any younger," he'd ask Brookins if she'd "thought about retiring so that [she] can spend time" with her mother, who was "getting older."[55] Brookins found the questions annoying and finally, the last time he asked her, she let her annoyance show, which put an end to the questions: "[H]e didn't ask me any more after the last time, because he saw that I was offended."[56]

At her deposition, Brookins testified that, other than the comment about the FAA not hiring older people and the questions about retirement, she couldn't recall Cochran making any other age-related comments.[57]

---

[51] App. 35:8-10; 34:1-2; Compl. ¶ 8; App. 86; App. 61:15-25.

[52] App. 53:9-12.

[53] App. 56:20-25.

[54] App. 55:21-22.

[55] App. 56:2-10.

[56] App. 55:8-9.

[57] App. 57:9-12.

**D.**      **After Brookins leaves the MIDO, her former supervisor sends her two, facially neutral text messages.**

In March 2022, Brookins received a promotion to a new, higher-paying role in another FAA office; she left the MIDO in mid-April 2022.[58] Other than a "matter of fact exchange" when she turned in her laptop, she hasn't spoken with Cochran since.[59]

Cochran, however, sent her two seemingly innocuous texts, both of which Brookins found offensive.

*The "thank you" text.* The day Brookins started her new job, Cochran sent her this text:[60]



Cochran later explained to the EEO investigator that he commonly sends these type of texts as way to show appreciation to former employees: "It is common for me to send a message(s) and/or call the employee(s) that has left my office to thank the individual(s) for the work they have done for me and the American people."[61] Although Brookins responded with "Thank you,"[62] his text hurt her feelings.[63] She wished he'd done her the courtesy of expressing his appreciation *publicly* on

---

[58] See *supra* n. 8.

[59] App. 46:19-25; 67:17-24.

[60] App. 166.

[61] App. 155 ¶ 32.

[62] App. 166.

[63] App. 68:6-9; App. 141 ¶ 44.

the conference call during which her transition was discussed — "like most people do when people are leaving," instead of expressing his appreciation *privately* in a text message just between the two of them.[64]

The *"COVID" text.* Two weeks later, Cochran sent Brookins one last text. Here's his text and her response:[65]



Cochran later explained to the EEO investigator why he sent the text: "The purpose of the text message was to offer my wife and my help if she needed help with groceries, hot meals, etc. from COVID exposure. This is something my wife and I have done for many other people and families."[66] But Brookins rejects the possibility that Cochran sent the text out of kindness:

---

[64] App. 68:7-8.

[65] App. 167.

[66] App. 156 ¶ 37.

"[T]hat's not the way I took it."[67] Instead, she took offense: "I was pissed about why he knew . . . what was happening in my building."[68]

## E.   After she leaves the MIDO, Brookins contacts an EEO counselor.

After Brookins left the MIDO, she ruminated about her past negative interactions with Cochran and Johnson.[69] "It took [her] a while," but, she eventually decided to contact an EEO counselor.[70] She "felt comfortable" doing so because she knew there would be no "negative repercussions" from Cochran: "I wasn't in his office anymore. So if I filed, I wouldn't have, you know, any negative repercussions from him because I'm not under his thumb anymore."[71] So, after a month of working in her new role, on May 15, 2022, Brookins contacted an EEO counselor.[72]

## F.   The FAA investigates Brookins' claims and issues a Final Agency Decision.

The FAA investigated Brookins' allegation of age discrimination and issued a 249-page written investigation report.[73] After considering that report and the applicable law, the FAA's Office of Civil Rights issued a Final Agency Decision on April 19, 2023, in which it found no discrimination had occurred.[74] As part of its rationale, the Office of Civil Rights explained that the "isolated and sporadic" incidents did not support Brookins' hostile-work environment claims:

---

[67] App. 69:13-14.

[68] App. 91 ¶ 25; App. 69: 15-17; App. 145 ¶ 61.

[69] App. 65:10-13.

[70] App. 65:10-13.

[71] App. 72:25—73:3.

[72] App. 2 (Final Agency Decision 2, Part II).

[73] Excerpts from the Office of Civil Rights investigation report are contained in Defendant's Appendix at pages 102 to 173.

[74] App. 1-11 (Final Agency Decision).

There was no evidence in the record that suggested that the complained of actions were based upon the Complainant's age or that management's conduct was related to her protected bases. The conduct at issue was isolated and sporadic over a seven year period. Further, we find that the Complainant did not show that a reasonable person in her position would have found the work environment to be hostile or abusive.[75]

### III.    Procedural Context

Brookins filed the current lawsuit in federal court on July 18, 2023.[76] The case is set for trial on the Court's four-week docket beginning September 9, 2024.[77] There is no right to a jury trial in ADEA actions against a federal employer, so if this case were to proceed to trial, it would be a bench trial. *See Lehman v. Nakshian*, 453 U.S. 156, 165 (1981) (concluding that "Congress did not intend to confer a right to trial by jury on ADEA plaintiffs proceeding against the Federal Government.").

### IV.    Summary-Judgment Standard

The Court should grant summary judgment if the pleadings and evidence show "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). Summary judgment is not "a disfavored procedural shortcut," but rather an "integral part of the Federal Rules as a whole, which are designed to secure the just, speedy and inexpensive determination of every action." *Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986).

"The party opposing summary judgment is required to identify specific evidence in the record and to articulate the precise manner in which that evidence supports his or her claim." *Ragas*

---

[75] App. 9 (Final Agency Decision).

[76] Pl.'s Original Compl. & Jury Demand, ECF No. 1.

[77] Scheduling Order, ECF No. 11, ¶ 1.

*v. Tenn. Gas Pipeline Co.*, 136 F.3d 455, 458 (5th Cir. 1998). "The nonmoving party must show that the evidence is sufficient to support the resolution of the material factual issues in their favor." *Wilbourn v. BRG Sports, Inc.*, 569 F. Supp. 3d 445, 451 (N.D. Tex. 2021) (Pittman, J.). When reviewing the evidence on a motion for summary judgment, courts must resolve all reasonable doubts and draw all reasonable inferences in the light most favorable to the non-movant. *See Walker v. Sears, Roebuck & Co.*, 853 F.2d 355, 358 (5th Cir. 1988). A court cannot make a credibility determination resolving conflicting evidence or competing inferences on summary judgment. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

It is well settled that summary judgment may be used to adjudicate affirmative defenses. FED. R. CIV. P. 56(a) ("A party may move for summary judgment, identifying each claim *or defense* . . . on which summary judgment is sought.") (emphasis added); 11 James Wm. Moore et al., MOORE'S FEDERAL PRACTICE – CIVIL § 56.02 (3d ed. 2024). When the summary-judgment movant has the burden of proof on an affirmative defense, however, the movant "must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgement in his favor.'" *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986). This requirement means that the movant must demonstrate that there are no genuine and material fact disputes and that the movant is entitled to judgment as a matter of law. *See Martin v. Alamo Cmty. Coll. Dist.*, 353 F.3d 409, 412 (5th Cir. 2003).

Finally, "in bench-trial cases the district court has greater discretion to grant summary judgment." *Jones v. U.S.*, 936 F.3d 318, 323 (5th Cir. 2019). The Fifth Circuit has explained that, in such cases, "[t]he judge may 'decide that the same evidence, presented to him or her as a trier of fact in a plenary trial, could not possibly lead to a different result.'" *Id.*

## V.        Argument and Authorities

The ADEA protects employees who are at least 40 years old. 29 U.S.C. § 633a(a). Under the provision that applies to federal employees, the Act requires that all personnel actions must be "free from any discrimination based on age." *Id.* That same provision also prohibits retaliation for filing an age-discrimination complaint. *Gomez-Perez v. Potter*, 533 U.S. 474, 479 (2008).

Brookins' complaint asserts three claims under the ADEA:

(1) that her former supervisor retaliated against her for complaining to an EEO counsellor;

(2) that her former supervisor gave a negative employment reference to a prospective employer; and

(3) that her former supervisor and her co-worker subjected her to a hostile work environment based on her age.[78]

The Court should grant summary judgment in favor of the FAA on all three claims for the reasons explained below.

### A.        Brookins' retaliation claim fails as a matter of law for three, independent reasons.

In her complaint, Brookins claims that, after she engaged in protected activity by complaining about her former supervisor to an EEO counselor, he retaliated against her.[79]

### 1.        Brookins recanted her retaliation claim during her deposition.

During her deposition, Brookins recanted her retaliation claim. She clarified that she was not asserting a retaliation claim as part of the current lawsuit; rather, it is a claim that is asserting in a different proceeding (against her current supervisor):

> Q.      In this lawsuit are you alleging that you were retaliated against? Are you alleging reprisal in this lawsuit, or is that part of your other proceeding?
> A.      It's going to be a part of the other one.

---

[78] Pl.'s First Am. Compl. & Jury Demand, ECF No. 10 (Compl.) 8.

[79] Compl. ¶¶ 21, 23-25, 42-45.

Q.      Is it a part of —
A.      Not — not this one.[80]

Because Brookins has recanted her retaliation claim, summary judgment should be granted
dismissing this claim.

> **2.      Alternatively, Brookins' retaliation claim is barred because she failed to exhaust her administrative remedies on that claim.**

The Supreme Court has made clear that claims of unlawful discrimination in federal
employment cannot be entertained in court unless the plaintiff had first exhausted the
administrative process provided for by the federal-sector statute. *See Brown v. Gen. Servs. Admin.*,
425 U.S. 820, 832 (1976); *see also* 29 U.S.C. § 633a(d); *Tolbert v. U.S.*, 916 F.2d 245, 248 (5th
Cir. 1990) (explaining why, in ADEA actions, a federal employee must exhaust administrative
remedies before pursuing a civil action). Failure to exhaust administrative remedies will ordinarily
bar a judicial remedy. *Tolbert*, 916 F.2d at 248 (ruling that because the plaintiff "did not exhaust
her administrative remedies," "the district court had no jurisdiction over her action"); *Ray v.
Freeman*, 626 F.2d 439, 443 (5th Cir. 1980) ("Allegations of new acts of discrimination [in an
EEO complaint], offered as the essential basis for the requested judicial review, are not
appropriate.").

Only those specific claims a plaintiff has pursued through the administrative process will
survive. In other words, a plaintiff must exhaust her administrative remedies for each discrete act
of discrimination or retaliation alleged or lose the ability to recover for it. *Randel v. U.S. Dep't of
the Navy*, 157 F.3d 392, 395 (5th Cir. 1998) ("Randel's racial discrimination claim is separate and
distinct from his reprisal claim, and accordingly, he must exhaust his administrative remedies on

---

[80] App. 70: 5-11.

that claim before seeking review in federal court."); *see also, e.g.*, *King v. Napolitano*, No. 3:08-CV-2014, 2010 WL 11618677, at *3 (N.D. Tex. Nov. 1, 2022) (dismissing the plaintiff's claims for age discrimination and religious discrimination for failure to exhaust administrative remedies because those claims fell outside the scope of her EEO complaints); *Dobson v. Alvarez,* No. CA3:98–CV–0187, 1999 WL 134371, at *5 (N.D. Tex. Mar. 10, 1999) (dismissing the plaintiff's ADEA disparate-impact claim because he "failed to assert his disparate impact claim in his EEO complaint and so has failed to exhaust his administrative remedies, with regard to this particular claim, as required under the ADEA").

Here, Brookins did not assert any retaliation claim during the administrative process. She didn't mention retaliation to the EEO counselor.[81] She didn't mention retaliation in her subsequent formal complaint of discrimination.[82] In particular, when completing the form to submit her formal complaint of discrimination, in the space provided to indicate the bases on which the employee believes she's been mistreated, she didn't check the box for "retaliation."[83]



15. Mark below ONLY the basis(es) you believe were relied on to take the actions described in #17.

☐ Race (Specify) _____     ☐ Mental Disability (Specify) _____
☐ Color (State Complexion) _____     ☐ Physical Disability (Specify) _____
☐ Religion (Specify) _____     ☐ Equal Pay/Compensation (Specify) _____
☐ Sex (Gender, Sexual Harassment, Pregnancy, Sexual Orientation, or Gender Identity) _____     ☐ Genetic Information (Specify) _____
    ☐ Retaliation (Date(s) of prior EEO Activity) _____
☐ National Origin (Specify) _____
X Age 04/11/1659 _____

---

[81] App. 124 (Counselor's Report – Part D – Basis(es) for Alleged Discrimination).

[82] App. 115-116 (Formal Complaint of Discrimination-Part III –Alleged Discriminatory Actions).

[83] App. 115.

Instead, the first time Brookins asserts a claim for retaliation is in her federal-court complaint.[84] At that point, it was too late for her to assert such a claim because "[i]t is well-settled that a plaintiff seeking relief for employment discrimination must exhaust administrative remedies as a *prerequisite* to filing suit." *King*, 2010 WL 11618677, at *1 (emphasis added). Summary judgment is therefore proper on Brookins' retaliation claim.

### 3. Finally, Brookins' retaliation claim fails on the merits.

Even if Brookins' retaliation claim were procedurally proper, it would fail on the merits. The parties agree that, to establish a prima facia case of retaliation under the ADEA, Brookins must prove three elements:

(1) she engaged in a protected activity;

(2) she suffered an adverse employment action; and

(3) a causal link existed between the protected activity and the adverse employment action.

Compl. ¶ 40 ("A plaintiff establishes a claim for retaliation when after engaging in protected activity as it relates to the ADEA is then subjected to an adverse employment action and a causal link exists between the protected activity and the adverse employment action."); *see also January v. City of Huntsville*, 74 F.4th 646, 652-53 (5th Cir. 2023) (listing the elements of a prima facie case of retaliation).

The only element Brookins can satisfy is the first one: that she engaged in protected activity when, on May 12, 2022, she contacted an EEO counsellor to report her concerns that she'd been mistreated based on her age while working in the MIDO.[85]

---

[84] Compl. ¶¶ 38-46.

[85] Compl. ¶ 41; App. 123.

Brookins cannot satisfy either the second or third elements because she cannot point to any adverse employment action that Cochran took against her following her protected activity on May 12, 2022. By the time she contacted an EEO counselor to report her concerns about Cochran, she had already been working for a new supervisor in a new building for a month.[86] By Brookins' own account, once she left the MIDO section, Cochran was no longer in a position to take any adverse employment action against her, which is why she "felt comfortable" contacting an EEO counselor.[87] As she explained in a letter to an HR representative: "After I departed from the MIDO Section, I felt comfortable that I could finally speak on situations I have experienced while working in this Section."[88] She elaborated on that reasoning at her deposition: "I wasn't in his office anymore. So if I filed, I wouldn't have, you know, any negative repercussions from him because I'm not under his thumb anymore. So I filed."[89] In those statements, Brookins admits that Cochran was powerless to take any adverse action against her, even if he had wanted to. Not surprisingly, she does not point to any adverse employment actions that Cochran took against her after she left the MIDO. Without such evidence, Brookins cannot satisfy the second or third element of a prima facie case of retaliation.

In sum, summary judgment is proper on Brookins' retaliation claim for three, independent reasons: (1) she recanted it during her deposition; (2) she failed to exhaust her administrative remedies on that claim; and (3) it fails on the merits.

---

[86] *See supra* n.8.

[87] App. 99.

[88] App. 99.

[89] App. 72:25—73:3.

**B.    Brookins' disparate-treatment claim — that her former supervisor provided a negative employment reference — fails because it's based on nothing more than her mistaken assumption.**

Brookins claims that Cochran intentionally discriminated against her, based on her age, by providing a negative employment reference to a potential employer, the FDIC.[90] When a plaintiff asserts a claim for discriminatory treatment based on age, the plaintiff must first establish a prima facie case by proving four elements:

1.  she is within the protected class (i.e., over 40 years of age);

2.  she is qualified for the position;

3.  she suffered an adverse employment action; and

4.  she was treated less favorably than similarly situated younger employees.

*Leal v. McHugh*, 731 F.3d 405, 410-11 (5th Cir. 2013). If Brookins fails to make a showing sufficient to establish the existence of each of these elements, Federal Rule of Civil Procedure 56 "mandates the entry of summary judgment" on her claim. *Jones*, 936 F.3d at 321. "[S]peculation cannot defeat summary judgment on a required element of the claim." *Id.* at 322.

Here, summary judgment is warranted because Brookins has no evidence of the third element—i.e., that she suffered an adverse employment action in the form of an alleged negative employment reference. Her suspicion that Cochran provided a negative employment reference to the FDIC is based on nothing more than her own speculation. Specifically, in Brookins' mind, there's only one possible explanation for why she didn't get the job: Cochran must have provided the FDIC with a negative employment reference. She has no actual evidence that is the reason she didn't get the job. Her speculation cannot defeat summary judgment.

---

[90] Compl. ¶ 22.

Moreover, the only competent summary-judgment evidence disproves Brookins' speculation. Both the hiring manager and Cochran aver that they never communicated with one another.[91] In particular, the FDIC interviewer has provided a sworn declaration explaining, "No one at FAA provided any information to me on a reference check for Ms. Brookins."[92] The reason Brookins didn't get the job, she explained, was because the top candidate accepted the position:

> 5. Although Ms. Brookins was one of the top candidates for this position, she was not the top candidate. I started conducting a reference check on Ms. Brookins in case the top candidate fell through. I frequently take that precaution. In this case, the top candidate accepted the position.

> 6. I never communicated with either of the two FAA managers that Ms. Brookins provided as references. No one at FAA provided any information to me on a reference check for Ms. Brookins. The reason Ms. Brookins was not selected for the position had nothing to do with any reference check from the FAA.[93]

In sum, Brookins has no evidence — much less competent summary-judgment evidence — that Cochran gave her a negative employment reference because of her age. Instead, the competent summary-judgment evidence establishes that neither Brookins' age, nor any employment reference from Cochran, had anything to do with why the FDIC did not hire Brookins. Therefore, summary judgment is proper on Brookins' disparate-treatment claim.

---

[91] App. 12 ¶ 6; App. 181 (Statement of Carlton N. Cochran to Accountability Board ¶¶ 56-58.)

[92] App. 12 ¶ 6.

[93] App. 12 ¶¶ 5-6.

**C.   Brookins' two hostile-work-environment claims fail as a matter of law.**

Brookins asserts two hostile-work-environment claims: one against her co-worker, Herbert "Jay" Johnson and one against Cochran.[94] Those claims fail as a matter of law before even reaching the merits. And even if they were to be considered on the merits, they'd fail on the merits as well.

**1.   Brookins' hostile-work-environment claims are barred.**

**a.   Brookins' co-worker harassment claim is barred because she failed to timely exhaust her administrative remedies on that claim.**

Brookins' hostile-work-environment claim against her co-worker fails because she failed to timely exhaust her administrative remedies on that claim. By her own version of events, the alleged harassment ceased when Johnson left the MIDO office in June 2016.[95] Once he left, the clock started ticking for her to exhaust her administrative remedies. If she wanted to preserve her ability to later bring a lawsuit based on his actions, she had two options: (1) contact an EEO counselor within 45 days to report the alleged discrimination, or (2) file a "notice of intent" to sue with the EEOC within 180 days. *See* 29 U.S.C. § 633a(d); 29 C.F.R. § 1614.105(a)(1). She did neither. Instead, she waited nearly six years — until May 12, 2022 — to contact an EEO counselor.[96] Because she did not timely exhaust her administrative remedies, she cannot bring a federal-court complaint based on her co-worker's alleged harassment.

**b.   Brookins' harassment claim against her supervisor is barred by the *Faragher/Ellerth* affirmative defense.**

In response to a claim that an employee's supervisor harassed her, a defending employer may raise an affirmative defense to liability, "subject to proof by a preponderance of the evidence."

---

[94] Compl. ¶¶ 10-12 (Johnson); ¶¶ 13-26 (Cochran).

[95] Compl. ¶ 10; App. 131 ¶ 11; App. 132 ¶ 17(a) & (c).

[96] App. 123.

*Faragher v. City of Boca Raton*, 524 U.S. 775, 778 (1998). The so-called *Faragher/Ellerth* defense "comprises two necessary elements: (a) that the employer exercised reasonable care to prevent and correct promptly any [] harassing behavior, and (b) that the plaintiff employee unreasonably failed to take advantage of any preventive or corrective opportunities provided by the employer or to avoid harm otherwise." *Faragher*, 524 U.S. at 778; *Burlington Indus. v. Ellerth*, 524 U.S. 742, 766 (1998).

Here, the FAA satisfies both elements as a matter of law. *As for the first element*, an employer can satisfy it with evidence that it took such reasonable measures as publishing a written anti-harassment policy and providing anti-harassment training that included specific instructions about how to report harassing conduct. *See, e.g., Holmes v. N. Tex. Care Laundry Coop.*, 304 F. Supp. 3d 525, 548 (N.D. Tex. 2018); *see also Giddens v. Cmty. Educ. Ctrs.*, 540 F. App'x 381, 389 (5th Cir. 2013). In this case, the FAA took those steps and more:

- *Written policies.* The FAA had written policies in place to prevent harassment, including (1) its Equal Employment Opportunity Statement; (2) its Policy on the Prevention of Harassment; and (3) a detailed anti-discrimination provision in the collective bargaining agreement.[97]

- *Training.* The FAA required employes to complete mandatory, annual EEO training, immediate after onboarding and annually thereafter.[98] Brookins understood the purpose of the training was to make sure employees understood that discrimination "is not going to be tolerated."[99] Brookins, Johnson, and Cochran all received the regular anti-harassment training.[100]

---

[97] Copies of the 2021 versions of these policies are included in the appendix at pages 171 and 172. *See also* App. 160 ¶ 12; App. 164 ¶ 12. The relevant collective-bargaining agreement provisions are included in the appendix on page 190. App. 190 (Def.'s Objs. & Answers to Pl.'s First Set of Interrogs. to Def. 4-6).

[98] App. 160 ¶12(a); App. 49:15:24; App. 37:6-21.

[99] App. 49:24; App. 50:25—60:6.

[100] App. 114, 168, 169 (Brookins & Cochran harassment prevention training records); App. 157 ¶ 41 (Cochran training); App. 164 ¶ 13) (Johnson training); App. 49:15—50:2 (Brookins training).

- *Awareness.* The FAA further raised awareness of its anti-harassment policy through workplace posters and emails.[101] Brookins admits that the posters were "all over the place."[102]

- *Reporting options.* Finally, the FAA offered employees multiple methods to report concerns. As the FAA explained in both its Equal Employment Opportunity Policy Statement and Policy on the Prevention of Harassment, employees were encouraged to immediately seek assistance from their Office of Human Resources, the Agency's Departmental Office of Civil Rights, their designated anti-harassment coordinator, or an EEO Counselor.[103] Brookins recalled that the annual training included, at the end, instructions on how to make a complaint (including providing hyperlinks, emails, and contact numbers).[104]

This evidence of the FAA's efforts to prevent and correct any harassing behavior satisfies the first prong of the *Faragher/Ellerth* affirmative defense.

*As for the second element,* the Supreme Court has explained that evidence that an employee failed to use any complaint procedure provided by the employer, "will normally suffice to satisfy the employer's burden under the second element of the defense." *Faragher*, 524 U.S. at 808. Similarly, evidence that an employee made only a vague report of mistreatment, without mentioning any unlawful harassment, will satisfy the second element. *Giddens*, 540 F. App'x at 389 (employee's complaint to superior that that her supervisor was mistreating her didn't satisfy the second prong because she did not report that he "was sexually harassing her").

---

[101] App. 156 ¶ 40 (posters and emails); App. 160 ¶ 12 (emails).

[102] App. 74:15-25.

[103] App. 171, 172.

[104] App. 49:24; App. 50:25—60:6; App. 37:16-21.

Here, Brookins waited seven years before she first contacted an EEO counsellor to report her concerns about age discrimination.[105] Although she vaguely recalls an earlier complaint to someone named "Karen," who may or may not have been in HR, Brookins admits that she said nothing to Karen about age discrimination:

Q.  Did you say that you were being mistreated based on your age?
A.  No. I didn't tell her anything specific. I don't like to gossip.[106]

As noted above under the Fifth Circuit precedent above, such vague complaints — that make no mention of unlawful harassment — aren't enough. *See Giddens*, 540 F. App'x at 389. The evidence shows that Brookins unreasonably failed to take advantage of the FAA's options to report harassment, which satisfies the second prong of the *Faragher/Ellerth* affirmative defense.

Brookins' proffered excuse for not using the FAA's reporting mechanisms earlier is one that the law has repeatedly rejected. She states that she delayed contacting an EEO counsellor because she feared Cochran would retaliate against her.[107] But "subjective fear of reprisal" is "insufficient as a matter of law to show that [an employee's] failure to complain and cooperate were reasonable." *Harper v. City of Jackson Mun. Sch. Dist.*, 414 F. Supp. 2d 595, 604 (S.D. Miss. 2005); *accord Barrett v. Applied Radiant Energy Corp.*, 240 F.3d 262, 267 (4th Cir. 2001) ("A generalized fear of retaliation does not excuse a failure to report sexual harassment. Instead, the law is specifically designed to encourage harassed employees to turn in their harasser because doing so inures to everyone's benefit."); *Shaw v. AutoZone, Inc.*, 180 F.3d 806, 813 (7th Cir. 1999) ("[A]n employee's subjective fears of confrontation, unpleasantness or retaliation do not alleviate

---

[105] Brookins started working in the MIDO on in April 2015. Compl. ¶ 8. She first contacted an EEO counsellor on May 12, 2022. App. 123.

[106] App. 45:12-15; 44:11-45:11.

[107] App. 99; App. 72:25—73:3.

the employee's duty under *Ellerth* to alert the employer to the allegedly hostile environment."); *Briseno v. McDaniel*, No. Civ.A.3:02-CV-2634-D, 2004 WL 2203255, at *5 (N.D. Tex. Sept. 30, 2004) ("An employee who fails to report harassment because of embarrassment, ordinary fear, or a general concern for retaliation does not act reasonably."). Under that caselaw, Brookins' generalized fear that Cochran would retaliate against her is insufficient to create a genuine dispute.

In sum, the uncontroverted summary-judgment evidence demonstrates both elements of the *Faragher/Ellerth* affirmative defense beyond controversy: that (1) the FAA exercised reasonable care to prevent and correct promptly any harassing behavior; and (2) Brookins unreasonably failed to take advantage of the FAA's efforts to prevent and correct harassment. Therefore, no liability can attach to the FAA for Brookins' hostile-work-environment claims.

### 2.    Alternatively, Brookins' hostile-work-environment claims fail on the merits.

A "hostile work environment" is a form of intentional discrimination that exists when the plaintiff is subjected to a hostile, intimidating, or offensive work environment that is sufficiently pervasive or severe to alter the conditions of the plaintiff's employment. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21 (1993); *Meritor Sav. Bank v. Vinson*, 477 U.S. 57, 67 (1986). To prove a hostile-work-environment claim based on age, the first three elements a plaintiff must establish are these:

(1) she was over the age of 40;

(2) she was subjected to harassment based on age; and

(3) the harassment created an intimidating, hostile, or offensive work environment.

*Dediol v. Best Chevrolet, Inc.*, 655 F.3d 435, 441 (5th Cir. 2011). As explained below, Brookins cannot establish a genuine dispute as to either the second or third element.

### a.    Brookins has no evidence of the second element — that she was subjected to harassment based on her age.

To establish the second element of a hostile-work-environment claim, the plaintiff must have competent summary-judgment evidence that "the complained-of actions were taken on account of her membership in a protected class." *Cherry v. CCA Props.*, 438 F. App'x 348, 353-54 (5th Cir. 2011); *accord Frank v. Xerox Corp.*, 347 F.3d 130, 138 (5th Cir. 2003) (requiring the plaintiff to prove that "the harassment complained of was based on race"); *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 873 (5th Cir. 1999) (requiring the plaintiff to prove "that the harassment was based on sex"). A plaintiff cannot recover under a hostile-work-environment claim if she only offers threadbare facts and legal conclusions that she was subjected to harassment based on her age. *Badgerow v. REJ Props.*, 974 F.3d 610, 618 (5th Cir. 2020) (explaining that the plaintiff's subjective belief that the alleged harassment was based on her gender was insufficient to defeat summary judgment). That's because the Fifth Circuit has repeatedly held that "subjective beliefs as to the motivation of others are insufficient." *Bye v. MGM Resorts Int'l*, 49 F.4th 918, 924 (5th Cir. 2022), *cert. dismissed*, 143 S. Ct. 1002 (2023); *accord Price v. Valvoline, L.L.C.*, 88 F.4th 1062, 1067 (5th Cir. 2023); *Jones v. Gulf Coast Rest. Grp.*, 8 F.4th 363, 369 (5th Cir. 2021); *Badgerow*, 974 F.3d at 618.

For example, in *Price v. Valvoline*, the plaintiff tried to prove a hostile work environment by pointing to facially neutral employment actions and then speculating that they were racially motivated. *Valvoline*, 88 F.4th at 1067. The Fifth Circuit rejected that approach:

> As for Price's contention that the district court should have considered Valvoline's "facially neutral actions" — such as nitpicking Price's work, "being yelled at for asking a question," or not being forthright with him concerning his status in the attendance point system — when evaluating the totality of the circumstances for a hostile work environment, we disagree. Price presented no evidence beyond his own speculation and that of [a black supervisor] that these "facially neutral actions"

were racially motivated. And our caselaw is clear that "subjective belief of racial
motivation, without more, is not sufficient to show a hostile work environment."
*Id.* at 1067.

This Court summarized that same principle when adjudicating a hostile-work-environment
claim in which the plaintiff, Lindsey, alleged that her co-worker "yelled and became highly
aggressive and verbally abusive with his attacks." *Lindsey v. Am. Airlines, Inc.*, No. 4:22-cv-
00502, 2023 WL 5807015, at * 4 & n.3 (N.D. Tex. Sept. 7, 2023) (Pittman, J.):

> Unfortunately for workers in Lindsey's position, being a jerk isn't illegal. True,
> "Title VII [ ] makes it unlawful for employers to require 'people to work in a
> discriminatorily hostile or abuse environment.'" But courts have consistently held
> that Title VII requires some objective indicia that a coworker's animus was based
> on an employee's membership in a protected class. Thus, without any evidence that
> [her co-worker's] workplace hostilities were sexually motivated, Lindsey cannot
> maintain a discrimination-by-sexual-harassment claim.

*Id.* (internal citations omitted).

Undeterred by the caselaw above, in support of her hostile-work environment claims,
Brookins takes the same approach that the Fifth Circuit has repeatedly rejected: she alleges a
facially neutral action and then speculates that it was due to her age.

*As for her claim against her co-worker*, Johnson, Brookins offers no actual evidence that
his rudeness or impatience had anything to do with her age. She admits he never made age-related
comments to her or rude comments about older people in general. [108] Moreover, the fact that they
"later became friends" after he left the MIDO office is evidence that he *didn't* harbor any animus
against her based on her age. [109] At her deposition, when asked why she believed Johnson's
treatment of her had anything to do with her age, she struggled. "Well, I don't know how to explain

---

[108] App. 41:2-4; App. 43:3-12.

[109] App. 38:24-25.

it," she admitted.[110] When pressed, she testified it was just something she "felt":

> He's never come out and said, Ew, you're old. No, he's never done that. But I think that he felt that I should be picking up right away if he runs through something to try to train me on — on doing a specific duty and I'm not catching on. So I felt that — I felt that.[111]

Under the Fifth Circuit precedent cited above, however, Brookins' subjective feelings about what motivated Johnson are not enough. Accordingly, summary judgment is proper on Brookins' claim for co-worker harassment.

*As for her claim against her supervisor*, most of Cochran's alleged actions have nothing to do with her age. Rather, they are facially neutral. For example, there is nothing age-based about Cochran treating her dismissively, responding to her inquiries with "duh," gossiping about her, cutting off a colleague who was praising her, expressing his appreciation for her work in a private text message rather than a group conference call, and inquiring if she'd been exposed to COVID.[112]

Brookins' belief that Cochran was motivated by ageism is based on her mistaken belief that she was always the oldest employee in the MIDO: "I strongly believe that my age played a part in his [Cochran's] working relationship with me, I have always been the oldest employee while working in the MIDO Section."[113] But Brookins was not "always the oldest employee while working in the MIDO Section." Her coworker, F.B., was the same age.[114] Even if she had been the oldest worker in the MIDO, that fact, by itself, would not prove that Cochran's treatment of her had anything to do with her age.

---

[110] App. 41:17-22.

[111] App. 42:22—43:2.

[112] Compl. ¶ 14; App. 141 ¶ 44; App. 166-67.

[113] App. 3 n.3; App. 170.

[114] App. 3 n.3; App. 170; App. 56:2-4 (admitting she was unaware of F.B.'s age).

In sum, Brookins has no evidence that the facially neutral conduct Cochran engaged in was based on her age. The only age-based conduct she alleges are Cochran's questions about her retirement plans and his purported opinion about the FAA's views on older workers. Those comments are addressed in the following section.

> **b.      Brookins has no evidence of the third element because none of the actions she complains of were objectively intimidating, hostile, or offensive.**

The Fifth Circuit has previously noted the Supreme Court's guidance that the federal anti-discrimination laws do not create a "'general civility code,' and 'simple teasing,' offhand comments, and isolated incidents (unless extremely serious) will not amount to discriminatory changes in the 'terms and conditions of employment.'" *Lauderdale v. Tex. Dep't of Crim. Just.*, 512 F.3d 157, 163 (5th Cir. 2007) (quoting *Faragher*, 524 U.S. at 788). Stated differently, "complaints attacking ordinary tribulations of the workplace," are not enough:

> Allegations of unpleasant work meetings, verbal reprimands, improper work requests, and unfair treatment do not constitute actionable adverse employment actions as discrimination or retaliation. Rather, there must be discriminatory intimidation, ridicule and insult that is sufficiently severe or pervasive to alter the conditions of the plaintiff's employment and create an abusive working environment.

*Bye*, 49 F.4th at 923. The Fifth Circuit has repeatedly held that "discourtesy, rudeness, or isolated incidents, unless extremely serious, are insufficient to establish severe or pervasive harassment." *See Hancock v. Barron Builders & Mgmt.*, 523 F. Supp. 2d 571, 575 (5th Cir. 2007) (quoting *Shepherd v. Comptroller of Pub. Accounts*, 168 F.3d 871, 874 (5th Cir. 1999)). For example:

- Laughing and glaring at a co-worker whenever she was denied a promotion, although "rude," "is nowhere near severe or pervasive as the conduct we have found necessary to support a hostile work environment claim." *Montgomery-Smith v. George*, 810 F. App'x 252, 259 (5th Cir. 2020).

- Similarly, yelling at the plaintiff when she could not locate a particular reference book, was "rude behavior" but was not sufficiently "severe or pervasive so as to alter the

actual terms or conditions of employment." *Read v. BT Alex Brown, Inc.*, 72 F. App'x 112, 118 (5th Cir. 2003).

As those examples illustrate, a workplace environment is hostile only if it is "permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently pervasive to alter conditions of the victim's employment." *See Dediol*, 655 F.3d at 441 (quoting *Alaniz v. Zamora-Quezada*, 591 F.3d 761, 771 (5th Cir. 2009)). For harassment to alter the conditions of a person's employment, "the conduct complained of must be both objectively and subjectively offensive." *Valvoline*, 88 F.4th at 1066; *accord Septimus*, 399 F.3d at 611. Whether an environment is hostile or abusive depends on the totality of the circumstances, including factors such as the frequency of the conduct, its severity, the degree to which the conduct is physically threatening or humiliating, and the degree to which the conduct unreasonably interferes with an employee's work performance. *Valvoline*, 88 F.4th at 1066-67.

*As for her claim against her co-worker,* none of his alleged conduct rises to the level of "severe or pervasive," even according to Brookins' version of events. According to Brookins,

- Johnson "proceeded to rush through the training efforts. So much so that Johnson would not permit Plaintiff to take notes on procedures he was covering, even after Plaintiff requested he slow down so that she could take proper notes."

- "After the rushed training, Plaintiff was assigned a work area right next to Johnson. When Plaintiff would ask Johnson for help, Johnson would flat ignore her and pretend he didn't hear her or harshly point to a training manual and advise her to figure it out and to 'learn [her] job."

- "Johnson would also regularly make remarks to other co-workers about Plaintiff, roll his eyes when he saw her and speak to her in a condescending manner."[115]

Such "discourtesy" and "rudeness," however, fall far short of what is required to establish a genuine dispute on the existence of a severe and pervasive hostile work environment, as the cases

---

[115] Comp. ¶¶ 10-11.

above illustrate. *See, e.g.*, *Hancock*, 523 F. Supp. 2d at 575. Johnson's conduct was never physical.[116] And it never interfered with Brookins' work performance. She picked up on everything he showed her and, by the time he left the MIDO, Brookins "knew everything."[117] She performed her job duties well — both during that first year and thereafter.[118] In sum, the evidence Brookins points to is insufficient to satisfy the third element of a harassment claim — that the harassment she experienced was severe and pervasive.

*As for her claim against her supervisor*, Brookins similarly has no evidence that Cochran subjected her to "severe or pervasive" harassment. The harassment wasn't "severe" because (1) it was never physical,[119] (2) it never interfered with her job performance,[120] and (3) most of it was nothing more than an "ordinary tribulation of the workplace" — such as being dismissive, demeaning, gossiping, fomenting office drama, and cutting off a co-worker who was praising her.[121] Even Brookins admits some of Cochran's alleged conduct might be what you'd expect "in any job."[122]

Moreover, the harassment Brookins alleges wasn't "pervasive." Even Brookins acknowledges that "Carlton was fine sometimes" and working with him included "some positive/good experiences."[123] Those positive experiences included:

---

[116] App. 39:14-21.

[117] App. 39:1-2.

[118] Compl. ¶ 32.

[119] App. 75:20—76:1.

[120] Compl. ¶ 32.

[121] Compl. ¶ 14.

[122] App. 58:4.

[123] App. 89 ¶ 16; App. 146 ¶ 66; *see also* App. 58:22; App. 66:10; App. 58:7-10.

- Every year, he gave her "excellent performance evaluations."[124]

- She received regular merit-pay increases.[125]

- He gave her cash awards "all the time," including in 2016, 2018, 2019, and 2020.[126]

- He awarded her a "Time Off Award" in 2017, which granted her two additional weeks of paid leave.[127]

- She was never disciplined, reprimanded, written up, or admonished.[128]

- She received a promotion while working for him, in May 2020.[129]

In fact, his favorable treatment extended outside the workplace. Brookins admits he would routinely "be nice" to her outside work by helping her out — such as by installing brakes on her cars.[130] Cochran corroborated her testimony by providing multiple examples of instances where he and his wife had given Brookins a helping hand outside of work:

> [T]here have been things my wife and I have done to help the Complainant such as (1) fixed her car several times, (2) provided advice on handling situations with her children when there was a problem, (3) helped the Complainant move items in her apartment, (4) helped the Complainant fix an issue with her television, (5) provided a ride to the airport for the Complainant at her request, . . . .[131]

---

[124] App. 62:5-8; Compl. ¶ 32.

[125] Compl. ¶ 32.

[126] App. 62:15—63:6; App. 84-85; App. 82; App. 87.

[127] App. 63:17—64:11; App. 83.

[128] Compl. ¶ 32.

[129] App. 59:8-11; App. 86.

[130] App. 57:22-24.

[131] App. 156 ¶ 37.

In sum, even by Brookins' account, Cochran did not create a workplace "permeated with discriminatory intimidation, ridicule, and insult, that [was] sufficiently pervasive to alter conditions of [her] employment." *See Dediol*, 655 F.3d at 441.

That is true even considering the age-related comments Cochran allegedly made on five occasions during the seven years she worked for him.

*As for the one time he allegedly told her that the FAA did not like hiring older workers*,[132] even by Brookins' account, he was expressing his personal opinion — as she put it, he was telling her "how the FAA views older employees *according to him*."[133] And she knew from first-hand experience that whatever he believed the FAA's views to be, he didn't share them: he'd hired her when she was 56, and helped promote her when she was 61.[134]

*As for the four times Cochran allegedly asked her about her retirement plans*, a supervisor's occasional inquiries about an employee's retirement plans cannot support a hostile-work-environment claim. *See, e.g.*, *Moody v. U.S. Sec'y of Army*, 72 F. App'x 235, 238-39 (5th Cir. 2003) (affirming summary judgment on a hostile-work environment claim where the plaintiff relied on comments about her age, including two which asked when she would retire, over a thirteen-month period); *Johnson v. Brennan*, No. 4:16–02612, 2017 WL 5672692, at *7 (S.D. Tex. Nov. 27, 2017) (holding that a supervisor's two inquiries about why the plaintiff "did not retire" did not support a hostile-work-environment claim); *Buchanan v. Exxon Mobil Corp.*, No. Civ.A. H-04-2889, 2006 WL 492605, at *4 (S.D. Tex. Mar. 1, 2006) ("[I]nquiries about future retirement dates 'every so often' do not amount to a hostile work environment."); *accord Daywalker v.*

---

[132] App. 36:13-16.

[133] App. 122 (emphasis added).

[134] App. 35:8-10; 7:1-2; Compl. ¶ 8; App. 86; App. 61:15-25.

*UTMB*, No. 22-408313, 2024 WL 94297, at *10 (5th Cir. Feb. 19, 2024) (affirming summary judgment on a hostile-work-environment claim where the plaintiff relied on a "handful" of discriminatory comments that happened "over the span of a few years" and were "separated by months").

Here, it's undisputed that (1) Cochran only asked Brookins about her retirement plans four times during the course of seven years; (2) he didn't make any ageist comments when inquiring about her retirement plans; and (3) when he saw the question offended her, he stopped asking.[135] Under the caselaw cited above, his occasional, casual inquiries about Brookins' retirement plans cannot support a hostile-work-environment claim.

In sum, Brookins' hostile-work environment claims fail because "[i]ncidental or occasional age-based comments, discourtesy, rudeness or isolated incidents . . . are not discriminatory changes in the terms and conditions of a worker's employment." *See Lacher v. West*, 147 F. Supp. 2d 538, 544 (N.D. Tex. 2001). Therefore, summary-judgment is proper on Brookins' hostile-work-environment claims.

**D.    The FAA should be granted summary judgment on Brookins' claims for damages.**

Finally, even if Brookins' claims were viable (which they aren't), she doesn't appear to have any recoverable damages.

### 1.    Brookins cannot recover punitive damages or emotional-distress damages under the ADEA.

The primary component of Brookins' damages model is her claim for $250,000 for what she describes as "Punitive/Emotional damages."[136] But punitive damages are not available in

---

[135] App. 54:12—55:9.

[136] App. 24, Part C.

ADEA actions against federal employers. *Leal*, 731 F.3d at 416 n.11. Neither are "damages for pain and suffering." *Smith v. Office of Pers. Mgmt.*, 778 F.2d 258, 263 (5th Cir. 1985).

### 2. Brookins cannot recover damages for front pay because she has no such damages.

In her complaint, Brookins seeks an award of front pay.[137] At her deposition, however, she withdrew that claim, explaining that she wasn't seeking damages for lost wages because she was never fired.[138] She was correct to concede that she can't recover front pay, given the caselaw. Although the ADEA vests a judge with discretion to grant front pay in lieu of reinstatement, such awards are to compensate plaintiffs who have been dismissed from employment. *Leal*, 731 F.3d at 416. Here, Brookins continues to work for the FAA in the higher-paying role she was promoted to two years ago.[139]

### 3. Brookins cannot recover for damages caused by "inconvenience" under the ADEA.

In her complaint, Brookins asks for an award of damages for unspecified "inconvenience."[140] She did not, however, include "inconvenience" as a category of damages in her initial disclosures.[141] Her failure to do so doesn't matter because, in a suit against a federal employer, a plaintiff cannot recover "consequential damages" — such as damages for moving expenses, increased commuting expenses, or higher house payments resulting from a discriminatory discharge. *Smith*, 778 F.2d at 261-62.

---

[137] Compl. ¶ 48(c).

[138] App. 76: 11-13. Similarly, in her initial disclosures, she did not list front pay as one of the categories of damages she is claiming. App. 24, Part C.

[139] App. 27 (Answer to Interrog. No. 16); App. 175.

[140] Compl. ¶ 48(f)-(g).

[141] App. 24, Part C.

4. **Brookins cannot recover attorney's fees under the ADEA.**

Finally, Brookins' seeks an award of attorney's fees.[142] However, the provision of the ADEA that applies to federal-government employees does not itself waive sovereign immunity for attorneys' fees. *Boehms v. Crowell*, 139 F.3d 452, 462 (5th Cir. 1998). (Although the Equal Access to Justice Act can, in certain circumstances, permit an award of attorney's fees in an ADEA action against the federal government, so far, Brookins has not asserted a claim under that Act.)

* * *

For the reasons stated above, the FAA should be granted summary judgment in its favor on Brookins' claims for front pay, punitive damages, emotional-distress damages, inconvenience, and attorney's fees.

## VI.   Conclusion

If the ADEA made it illegal for a boss or co-worker to be a jerk, Brookins' case might survive summary judgment and proceed to a bench trial. As this Court has noted, however, "being a jerk isn't illegal." *Lindsey*, 2023 WL 5807015, at * 4 & n.3. Similarly, the Fifth Circuit has cautioned that not all hurt feelings "can be remedied by federal law." *Bye*, 49 F.4th at 924.

Here, even if this case were to proceed to a bench trial, the record does not contain evidence from which this Court could possibly conclude that (1) Brookins' former supervisor retaliated against her; (2) her former supervisor discriminated against her based on her age by allegedly providing a prospective employer with a negative employment reference; or (3) her former co-worker or supervisor subjected her to a hostile work environment based on her age. Finally, even if there were such evidence, Brookins has no real damages. The bottom line is this: there is simply no merit to Brookins' claims. Rule 56 provides a way to dispose of meritless cases such as this

---

[142] Compl. ¶ 48(a).

one, and the FAA respectfully requests that the Court apply that rule here to grant summary judgment in favor of the FAA, dismiss Brookins entire complaint with prejudice, and enter final judgment in the FAA's favor.

Respectfully submitted,

LEIGHA SIMONTON
UNITED STATES ATTORNEY

/s/ Andrea Hyatt
Andrea Hyatt
Assistant United States Attorney
Texas Bar No. 24007419
Burnett Plaza, Suite 1700
801 Cherry Street, Unit #4
Fort Worth, Texas 76102-6882
Phone: 817.252.5200
Fax: 817.252.5458
Andrea.Hyatt@usdoj.gov

*Attorneys for Defendant*

## Certificate of Service

On May 7, 2024, I electronically submitted the foregoing document with the clerk of court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all parties electronically or by another manner authorized by Federal Rule of Civil Procedure 5(b)(2).

/s/ Andrea Hyatt
Andrea Hyatt

37