IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

| | |
|---|---|
| **CYNTHIA BROOKINS,** § | |
| *Plaintiff,* § | |
| § | |
| vs. § | **CIVIL ACTION NO. 4:23-cv-744** |
| § | |
| **PETER P.M. BUTTIGIEG, SECRETARY** § | |
| **OF THE U.S. DEPARTMENT OF** § | |
| **TRANSPORTATION (FAA)** § | |
| *Defendant.* § | |

# PLAINTIFF'S BRIEF IN RESPONSE TO DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

Respectfully Submitted,

*/s/ Ali Crocker Russell*
Ali Crocker Russell
Texas Bar No. 24098868

**CROCKER RUSSELL & ASSOCIATES**
200 W. Oak Street
Mansfield, Texas 76063
Phone: (817) 482-6570
Fax: (682) 232-1850
Email: ali@cralawfirm.com
**ATTORNEY FOR PLAINTIFF**

## Table of Contents

I. Nature and Stage of Proceedings …………………………………………………..5

II. Factual Background…………………………………………………………………...6

    a. Employer/Employee Relationship…………………………………………...6

    b. Plaintiff's Age…………………………………………………………………..6

    c. Plaintiff Never Counseled or Disciplined by Defendant………………………….6

III. Responsive Argument……………………………………………………………………6

    a. Summary Judgment Standard…………………………………………………..6

    b. Discrimination Under ADEA……………………………………………………..8

    c. Retaliation...…………………………………………………………………...14

    d. Cochran credibility is a question of fact……………………………………………18

    e. There exists a genuine issue of fact……………………………………………...19

IV. Conclusion………………………………………………………………………...19

## Table of Authorities

CASES

*Adams v. Vaughn*, No. 3:18- CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting*Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam))..…………………………………………………………………………………………16

*Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2513 (1986)………………………......……7, 8

*Ashe v. Corley*, 992 F.2d 540 (5th Cir. 1993)…………………………………………………..7, 10

*Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986)………………………………………….6

*E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir.2009)…………………….14

*Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351)……………………………………………………………………………………………8

*Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986)…………………7

*McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008)………………………………………15

*McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973)…………………………………..9, 10

*McMichael v. Transocean Offshore Drilling, Inc.* 924, F3d 447, quoting *e.g.*, *Rachid*, 376 F.3d at 315…………………………………………………………………………………………………9

*Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998)…………………..7

*Pacheco*, 448 F.3d at 788-89……………………………………………………………………..15

*Palasota*, 342 F.3d at 577–78……………………………………………………………………...9

*Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990)……….7

*Sanchez v. Standard Brands, Inc.*, 431 F.2d 455, 465 (5th Cir. 1970)……………………………14

*Sanchez*, 431 F.2d at 466……………………………………………………………………………15

*Tolan v. Cotton*, 132 S. Ct. 1861 (U.S. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986))…………………………………………….7

*Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992), cert. denied, 506 U.S. 825, 121 L. Ed. 2d 46, 113 S. Ct. 82 (1992)……………………………………………………………………………..7

*Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)…………….16

FED. R. CIV. P. 56(c)……………………………………………………………………….6

Tex. Lab. Code § 21.051……………………………………………………………………8

42 U.S.C. §2000e-3(a)……………………………………………………………………..16

**TO THE HONORABLE UNITED STATES DISTRICT COURT:**

**NOW COMES** Plaintiff, Cynthia Brookins, (hereinafter "Plaintiff" or "Brookins") and files this Response to Defendant, Peter P.M. Buttigieg, Secretary of the U.S. Department of Transportation (FAA)'s (hereinafter "Defendant" or "FAA") Motion for Summary Judgement. In support thereof, Plaintiff shows the Court the following:

## I.   NATURE AND STAGE OF PROCEEDINGS

Plaintiff filed her Original Complaint on July 18, 2023 [ECF No. 1] alleging that she was discriminated against due to her age and retaliated against, that Defendant created a hostile work environment, and that Defendant negligently hired, supervised, trained and retained third party employees. Plaintiff filed her First Amended Complaint on September 11, 2023, removing her claims of hostile work environment and negligence hiring, supervising, training and retention.

The parties have diligently engaged in the discovery process and the discovery period was closed on April 12, 2024. [ECF No. 11¶6].

Defendant filed its *Motion for Summary Judgment* and corresponding brief and exhibits on May 7, 2024 [ECF. 19-21].

After several days of negotiations, the parties entered into an agreement of settlement in this case and submitted their *Joint Motion to Stay Deadlines* [ECF No. 24]. Consistent with Defendant's actions that led to this lawsuit, Defendant acted in bad faith and shockingly withdrew their settlement offer by alleging that there had been a "fundamental misunderstanding on a material element." [ECF No. 26 ¶3].

## II.   FACTUAL BACKGROUND

### A. Employer/Employee Relationship

During 2015-2022, Plaintiff was employed by Defendant as a full-time Management Program Assistant at the MIDO Section, AIR-822 in Fort Worth, Texas.

Therefore, Defendant is an "employer" and Plaintiff is an "employee" as those terms are defined in the Texas Commission on Human Rights Act (TCHRA), Texas Labor Code Section 21.001 et seq. At all times relevant, Plaintiff was employed by Defendant.

### B. Plaintiff's Age

At the time of Plaintiff's complaints during scope of time of employment that is relevant to this lawsuit, she was over the age of forty. Plaintiff is currently sixty-five years old.

### C. Plaintiff Never Counseled or Disciplined by Defendant

The parties agree that Plaintiff was never counseled or disciplined by Defendant. In fact, Defendant concedes that "Plaintiff received favorable performance reviews every year…" [ECF No. 20 ¶2].

## III.   RESPONSIVE ARGUMENT

### A. Summary Judgment Standard

Rule 56(c) provides that summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." FED. R. CIV. P. 56(c). The moving party must "demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 106 S. Ct. 2548, 2553 (1986).

The movant bears the responsibility of informing the district court of the basis for its motion and identifying those portions of the pleadings, depositions, answers to interrogatories and admissions on file, together with affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact. *Topalian v. Ehrman*, 954 F.2d 1125 (5th Cir. 1992), cert. denied, 506 U.S. 825, 121 L. Ed. 2d 46, 113 S. Ct. 82 (1992). Nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial. *Ashe v. Corley*, 992 F.2d 540 (5th Cir. 1993). Once the movant carries this burden, the burden shifts to the nonmovant to show that summary judgment should not be granted. *Morris v. Covan World Wide Moving, Inc.*, 144 F.3d 377, 380 (5th Cir. 1998). A party opposing a properly supported motion for summary judgment may not rest upon mere allegations or denials in a pleading, and unsubstantiated assertions that a fact issue exists will not suffice. *Id*. "[T]he nonmoving party must set forth specific facts showing the existence of a 'genuine' issue concerning every essential component of its case." *Id*.

In considering a motion for summary judgment, the district court must view the evidence "through the prism of the substantive evidentiary burden." *Anderson v. Liberty Lobby, Inc.*, 106 S. Ct. 2505, 2513 (1986). All justifiable inferences to be drawn from the underlying facts must be viewed in the light most favorable to the nonmoving party. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 106 S. Ct. 1348, 1356 (1986). The evidence of the nonmovant is to be believed, with all justifiable inferences drawn and all reasonable doubts resolved in [her] favor. *See Palmer v. BRG of Ga., Inc.*, 498 U.S. 46, 49 n. 5, 111 S.Ct. 401, 112 L.Ed.2d 349 (1990). In ruling on a motion for summary judgment, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in [her] favor." *Tolan v. Cotton*, 132 S. Ct. 1861 (U.S. 2014)

(quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986)). Courts may not resolve genuine disputes of fact in favor of the party seeking summary judgment. *Id*., 134 S.Ct. at 1866. "If the record, viewed in this light, could not lead a rational trier of fact to find" for the nonmovant, then summary judgment is proper. *Kelley v. Price- Macemon, Inc.*, 992 F.2d 1408, 1413 (5th Cir. 1993) (citing Matsushita, 106 S. Ct. at 1351). On the other hand, if "the factfinder could reasonably find in [the nonmovant's] favor, then summary judgment is improper." *Id*. Even if the standards of Rule 56 are met, a court has discretion to deny a motion for summary judgment if it believes that "the better course would be to proceed to a full trial." *Anderson*, 106 S. Ct. at 2513.

### B. Discrimination Under the ADEA

The Age Discrimination in Employment Act of 1967., 81 Stat. 602, states: "it shall be unlawful employment practice for an employer to fail or refuse to hire or to discharge any individual, or otherwise to discriminate against any individual with respect to [her] compensation, terms, conditions, or privileges of employment, because of such individual's age; or to limit, segregate, or classify [her] employees or applicants for employment in any way which would deprive or tend to deprive any individual of employment opportunities or otherwise adversely affect [her] status as an employee, because of age." *See also* Tex. Lab. Code § 21.051.

The case law is clear: a plaintiff must establish a *prima facie* case of discrimination. If the plaintiff establishes a prima facie case, the burden then shifts to the defendant to articulate some legitimate nondiscriminatory reason for its employment decision. If the defendant articulates a legitimate nondiscriminatory reason, then, the plaintiff, in order to prevail, must demonstrate that the employer's alleged reason for the adverse employment decision is a pretext for another motive

which is discriminatory. *See McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). Within this general framework, the specifics to establish a prima facie case are outlined in the four-point *McDonnell* test. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. In *McDonnell*, the Court established a four-point test by which a plaintiff can show a prima facie case of discrimination. The plaintiff must show that: (1) the plaintiff belongs to a class protected by Title VII; (2) the plaintiff was qualified for her position; (3) the plaintiff, despite being qualified, was rejected; plaintiff experienced an adverse employment action; and (4) similarly situated individuals outside her protected class were treated more favorably, or other circumstances surrounding the adverse employment action give rise to an inference of discrimination.

Courts typically only find a statement to be evidence of age discrimination in two situations. First, courts will find evidence of age discrimination where a statement references age in a derogatory or stereotypical way. *See, McMichael v. Transocean Offshore Drilling, Inc.* 924, F3d 447, quoting *e.g.*, *Rachid*, 376 F.3d at 315 (finding evidence of age discrimination where the employer told the plaintiff "... you're too old"). Second, courts will find evidence of age discrimination where the employer's statement shows a desire to replace older employees with younger ones. *See, e.g.*, *Palasota*, 342 F.3d at 577–78 (finding sufficient evidence to sustain a jury verdict where the employer stated that the plaintiff's "sales techniques were out of the 'old school' of selling"; commented that "there was a 'graying of the sales force' " and the employer needed "to find a way to get through it;" and recommended severance packages for fourteen named employees, all of whom were specifically identified as over fifty years of age, to create "the flexibility to bring on some new players").

In this case, Plaintiff is able to show that Defendant made age references in derogatory and stereotypical ways and Defendant has a desire to replace older employees with younger ones.

1. <u>Defendant Fails to Demonstrate in its *Motion* that there are no factual issues warranting trial.</u>

As previous stated, it is well established law and practice that the "nonmovant is not required to respond to a motion for summary judgment until the movant first meets its burden of demonstrating that there are no factual issues warranting trial." *Ashe v. Corley*, 992 F.2d 540 (5th Cir. 1993). Plaintiff asserts that the Defendant has failed to address the majority of the elements, specifically elements 1, 2, and 4 of *McDonnell*. Instead, Defendant merely skims over Plaintiff's primary cause of action of age discrimination to only include three (3) paragraphs in its forty-four page *Motion*. [ECF. 20 ¶ 34-36]. Defendant literal only defense to Plaintiff's age discrimination claim is that there is no objective proof that Defendant's age discrimination, by and through Cochran caused her a lack of promotion. *Id*.

Even though Defendant fails to address elements 1, 2 and 4, Plaintiff will provide a response in an abundance of caution.

2. <u>Plaintiff was Over the Age of Forty During the Relevant Time Period</u>.

The Age Discrimination in Employment Act of 1967 (ADEA) protects certain applicants and employees 40 years of age and older from discrimination on the basis of age in hiring, promotion, discharge, compensation, or terms, conditions or privileges of employment.

Plaintiff's date of birth is April 11, 1959. *(See Exhibit A ¶ 2)*.

Plaintiff was approximately fifty-six (56) years old when she was first hired by Defendant. *Id*.

Therefore, Plaintiff is a member of a protected class in terms of the ADEA and has presented sufficient evidence establishing the first element of her prima facie case of age discrimination.

3. <u>Plaintiff was Qualified for the Job</u>.

Defendant does not disclaim that Plaintiff was not qualified for her job and therefore this element is undisputed. Additionally, and by Defendant's own admission, Plaintiff was never admonished, reprimanded or written up concerning her job performance. [ECF 20 ¶58]. Plaintiff received good performance evaluations during the relevant time. *Id*.

Therefore, Plaintiff was qualified for her position and has presented sufficient evidence establishing the second element of her prima facie case of age discrimination.

4. <u>"Because of her Age" Plaintiff Suffered Adverse Employment Action</u>.

Plaintiff suffered adverse employment action in the form of not receiving a promotion under Cochran due to her age. *(See Exhibit A ¶16)*. More specifically, Plaintiff applied for the position of Administrative Support Assistant in the Dallas Field Office of the FDIC in 2022. *(See Exhibit A ¶ 13)*.  and was passed up because of Cochran's agism. *Id*.

During her seven years under Cochran, Plaintiff received a performance evaluation that commended her for her achievements and awarded her multiple pay increases based on her continued excellent work performance and output. However, Plaintiff was not promoted. *(See Exhibit A ¶16)*. And despite repeated inquiries to human resources and other members of management, no response, legitimate or otherwise, was ever provided to Plaintiff. *(See Exhibit A ¶ 26)*.

Plaintiff was the oldest in the MIDO section. (*See Exhibit C; Exhibit E ¶47)*. During

Plaintiff's deposition and as stated in Defendant's *Motion*, Plaintiff experienced her supervisor, Cochran make several offensive and derogatory ageist comments. Throughout Plaintiff's seven years of employment, Cochran made it known to Plaintiff that "according to him" the FAA viewed older employees differently than younger employees. (*See Exhibit A ¶7*; *Exhibit B* 18:13-16). In one instance in particular, Plaintiff attempted to go to a different "area" to learn about real estate in order to gain more transferrable skills. *(See Exhibit B 53:2-25).* Plaintiff was denied this opportunity and questioned why she had been denied to Cochran. *Id.* Cochran responded to her that "the folks at the FAA don't really like hiring older folks because they're not innovative." *(See Exhibit B 53:25; 541).* Cochran also stated that older people were not "tech savvy" and "they don't pick up as well as quick as the younger folks." *(See Exhibit B 53:2-25; 54:1-14).* Even when Plaintiff informed Cochran that she was offended by his comments and said "Wow, Carolton that was really mean to say." *(See Exhibit B 54:8-9).* Cochran responded with "well, it's true." *Id*.

While Defendant states that Cochran did nothing to impede her ability to get a promotion, there exists a genuine question of fact exists in why would Cochran promote Plaintiff if he wanted Plaintiff to retire? However, Defendant fails to address Plaintiff's assertion that Cochran's continuous harassing comments about her age. In fact, Cochran frequently spoke to Plaintiff and quizzed her about her retirement plans. (*See Exhibit A ¶5; Exhibit B 70:4-10; 22-25*). Plaintiff testified and asserted that Cochran brought her up retirement on several occasions because she was not "getting any younger." *Id*. Plaintiff further represents, again, that Cochran knew these comments offended her. (*See Exhibit A ¶9).*

The only identifying portions of the pleadings, depositions, answers to interrogatories and admissions on file, or affidavits Defendant points to in its *Motion* are two paragraphs from a self-

serving affidavit submitted by a FDIC interviewer stating that he never spoke with Cochran even through her electronic communications to Plaintiff state otherwise. [ECF. 20 ¶36]. In Plaintiff's April 22, 2022, and March 10, electronic communication with the hiring manager, Ms. Vickie Conrad, she specifically acknowledges that Cochran and Conrad were to connect for a reference check as Cochran "was aware that you only wanted to consult with him." (*See Exhibit D*). Ms. Conrad asked Ms. Brookins for Cochran's contact information and represented to Plaintiff that she would be "contact him soon for a reference check." *Id*.

Defendant also includes some oddly vague electronic communications between Ms. Conrad and the investigators wherein Ms. Conrad impeaches herself and represented that she "never talked to anyone about a reference check about any FAA employee who applied for a position here at the FDIC." *Id.* However, Ms. Conrad and Plaintiff clearly exchanged electronic communications expressing Ms. Conrad's clear intent on Cochran. Furthermore, after Plaintiff was notified that she did not receive the job Defendant informed Plaintiff that the position was filled by someone "younger." (*See Exhibit A ¶17).* Defendant failed to identify the person's qualifications and has failed to bring forth this information through this process. (*See Exhibit A ¶16).*

Defendant poses a genuine question of material fact as to whether age was the motiving factor when making the hiring decisions due to Cochran speaking with other hiring officials, superiors or in any other way interfered with Plaintiff receiving a job promotion or if his general tacky ageist commentary affected Plaintiff's promotional opportunities. Moreover, it is important to note that Defendant has failed to state who the individual was and the age of the individual who received the promotion over Plaintiff and has also failed to disclose if that individual was *not*

within Plaintiff's class (i.e. the age of the person who received the promotion). Thus, Defendant's own self-serving affidavit creates a genuine issue of material fact which overcomes summary judgment.

Because Plaintiff has met its burden to show prima facie showing of age discrimination, Defendant must show this Court that the reasons for the adverse employment actions enumerated herein are legitimate and non-discriminatory. *E.E.O.C. v. Chevron Phillips Chem. Co.*, 570 F.3d 606, 615 (5th Cir.2009). Defendant merely asserts that Plaintiff was "not a top candidate" but fails to provide a non-discriminatory reason why Plaintiff was chosen when Defendant concedes what an amazing employee Plaintiff has been and is; leaving a genuine issue of fact as to whether or not the deciding factor in the hiring process was Plaintiff's age.

Therefore, Plaintiff has suffered an adverse employment action and has presented sufficient evidence establishing the third element of her prima facie case of age discrimination. In sum, Plaintiff has demonstrated a prima facie case of discrimination under the Age Discrimination in Employment Act of 1967 (ADEA).

### C. Retaliation

1. <u>Plaintiff's Retaliation Claim was Timely Filed</u>.

Defendant attempts to argue the statute of limitations bars Plaintiff's Retaliation claim as Plaintiff "did not check the box." [ECF 20 ¶20].

"On one hand, the scope of an EEOC charge should be liberally construed for litigation purposes because Title VII "was designed to protect the many who are unlettered and unschooled in the nuances of literary draftsmanship." *Sanchez v. Standard Brands, Inc*., 431 F.2d 455, 465 (5th Cir. 1970). On the other hand, the "primary purpose of Title VII is to trigger the investigatory

and conciliatory procedures of the EEOC, in [an] attempt to achieve non-judicial resolution of employment discrimination claims." *Pacheco*, 448 F.3d at 788-89. To reconcile these policies, this court construes an EEOC complaint broadly but in terms of the administrative EEOC investigation that "can reasonably be expected to grow out of the charge of discrimination." *Sanchez*, 431 F.2d at 466. [The Courts] use a "fact-intensive analysis" of the administrative charge that looks beyond the four corners of the document to its substance. Id. In sum, a Title VII lawsuit may include allegations "like or related to allegation[s] contained in the [EEOC] charge and growing out of such allegations during the pendency of the case before the Commission." *Id.*" *McClain v. Lufkin Indus.*, 519 F.3d 264, 273 (5th Cir. 2008).

Admittedly Plaintiff filed her initial charge pro se and Plaintiff acknowledges that she did not "check the box" of retaliation. However, what Defendants do not mention and cannot overcome is that when Plaintiff affidavit and EEO investigation specifically discuss Plaintiff's retaliation claims. (*See Exhibit E ¶30-31, 35-39).*

Throughout the entire EEO investigation, Plaintiff's assertions have been clear.  Plaintiff has always alleged that Cochran has a history of interfering with employee interviews, meddling in other people's promotions and how offended Plaintiff has been at Cochran's agist comments. During the EEO interview, Plaintiff was asked to "explain how the management official coerced you into providing the notes from another job candidate's interview by specifically describing what the person did or said to you…" (*See Exhibit E ¶30). to* which, Plaintiff gave a lengthy description of Cochran's request for Plaintiff to give him notes for candidates interviews even though it was against FAA policies.  *Id.*  Plaintiff further went into details about how she "contacted her previous manager, Caroll Dobbs" and made a report about her concerns about

Cochran asking her to do this as well as the complaints she had against him for his ageist comments. *Id*.

Therefore, the claim was reasonably expected to grow out of the EEO's investigation and Plaintiff sufficiently exhausted her administrative remedies allowing this matter to proceed in due course through litigation.

2. Plaintiff engaged in protected activity when she reported Cochran.

Defendant concedes that Plaintiff meets her burden that she engaged in protected activity. [ECF. No. 20 ¶31]. Defendant also concedes and acknowledges that Plaintiff contacted an EEO Counselor, and reported that she was "mistreated based on her wage while working in the MIDO." *Id.* However, and in an abundance of caution, Plaintiff will respond.

A plaintiff establishes a claim for retaliation when after engaging in protected activity as it relates to the ADEA is then subjected to an adverse employment action and a causal link exists between the protected activity and the adverse employment action." *Adams v. Vaughn*, No. 3:18-CV-1109-B-BT, 2019 WL 1003845, at *3 (N.D. Tex. Feb. 12, 2019)(quoting *Wright v. Chevron Philips Chem. Co.*, 734 F. App'x 931, 935 (5th Cir. 2018)(per curiam)). Protected activity includes complaining to supervisors about acts of unlawful discrimination. 42 U.S.C. §2000e-3(a); *Valdarez v. Lubbock Cty. Hosp. Dist.*, 611 Fed. Appx. 816, 820-21 (5th Cir. 2015)(finding that the plaintiff's report of sexual harassment to his supervisor was protected activity).

Again, Plaintiff engaged in a Title VII protected activity when she complained about Cochran's orders to turn over another candidate's interview notes, the age discrimination she faced and the increased scrutiny creating a hostile work environment to her previous manager and to the EEO on May 12, 2022. Importantly, Defendant never contests Plaintiff's asserts that Cochran

ordered her to turn over another candidate's interview notes; nor does Defendant contest that Cochran said the offensive ageist comments to Plaintiff.

Therefore, Plaintiff is able to meet her burden that she engaged in protected activity.

3. <u>There exists a causal link between Plaintiff reporting Cochran and the retaliatory treatment.</u>

The Age Discrimination in Employment Act of 1967 (the "ADEA") prohibits retaliation against an employee who reports discrimination based on age. It is unlawful to retaliate against employees for communicating with a supervisor or manager about age discrimination, including harassment. Retaliation can take the form of a reprimand; giving a performance evaluation that is lower than it should be; engaging in physical or verbal abuse; increased scrutiny; and making the employee's work more difficult.

After Plaintiff made her May 12, 2022 EEO report, Plaintiff was under a new supervisor, Jeviti McBurrows. (*See Exhibit A ¶18*). Plaintiff was required to take time off work to participate in the EEO process, including taking blocks of time off to engage in the EEO interview process. Plaintiff asked McBurrows how to "code her time off requests" to which McBurrows began asking questions about Plaintiff's EEO investigation. Assuming that McBurrows was to be trusted, Plaintiff showed a text message she received from Cochran and summarized what Cochran did to Plaintiff. (*See Exhibit A ¶20*).

Plaintiff was advised by a co-worker that McBurrows and Cochran became in contact after this and during the EEO investigation. *(See Exhibit A ¶21)*. Even Cochran admitted that he and McBurrows were in touch and discussed Plaintiff in his interview with the EEOC. (*See Exhibit F* ¶24). In early June of 2022, McBurrows began treating Plaintiff adversely and making her workdays a living nightmare. McBurrows became snappy, rude, hostile and would go significantly

time periods of ignoring Plaintiff.  In July of 2022, Plaintiff asked McBurrows why she was receiving this type of treatment, McBurrows stated "what… are you going file a complaint against me too?"  Plaintiff was shocked, saddened and dismayed that the federal government would treat such a loyal, hardworking and dedicated employee like this.  The working relationship between Plaintiff and McBurrows soured over the course of 2022 and in April of 2023, McBurrows transferred to another department.

At one point, McBurrows let it slip when she was berating Plaintff that she had "heard that [Plaintiff] was like this.  Cochran was right."  Again, dismayed and disheartened, Plaintiff filed another EEO complaint.

Defendant has weaponized the EEO system against Plaintiff.  *(See Exhibit A ¶26).*  By reporting Defendant and its agent's conduct through the appropriate procedural channels, Plaintiff is entitled to certain protections under the law.  Plaintiff is extremely disappointed that these investigations turn into office gossip and are used against her during her daily work life.  *Id*.  No employee, especially one who works for the Untied States Federal Government, should be subjected to backlash, offensive remarks, and retaliation because he or she engaged in the lawful process of the equivalent of a HR complaint.

### D. Cochran credibility is a question of fact

Throughout the EEO process, Cochran made statements and misrepresentations, including but not limited to denying that he ever asked Plaintiff to hand over interview notes. (*See Exhibit F* ¶23).  Because Plaintiff knew how sneaky and dishonest Cochran is, Plaintiff recorded one of the incidents herself.  (*See Exhibit H; video recording)*.  Upon review of said video, Cochran lies will be revealed.  Furthermore, the FAA issued a memorandum of counseling to Cochran over this

incident on March 3, 2023. (*See Exhibit G*). In the memorandum, the FAA cautioned Cochran and "placed [him] on notice of expectations in the future." (*Id*).

### E. There exists a genuine issue of fact

Based on the foregoing arguments, authorities and evidence, Plaintiff has established a prima facie case of discrimination based on age as well as her claims for retaliation. Plaintiff worked for Defendant for a number of years with no issues until Cochran begam targeting the oldest employee under his supervision. Defendant cannot pinpoint another reason for such treatment of Plaintiff nor has Defendant bothered to deny or defend Cochran or McBurrows actions. All of Defendant's assertions do not negate any questions of fact before this Court nor do Defendant's assertions directly address any underlying motivations for its agents actors.

**WHEREFORE, PREMISES CONSIDERED**, Plaintiff respectfully requests that the Court deny Defendant's Motion for Summary Judgment and allow this matter to proceed accordingly.

Respectfully submitted,

*/s/ Ali Crocker Russell*
Ali Crocker Russell
Texas Bar No. 24098868

**CROCKER RUSSELL & ASSOCIATES**
200 W. Oak Street
Mansfield, Texas 76063
Phone: (817) 482-6570
Fax: (682) 232-1850
Email: ali@cralawfirm.com
**ATTORNEY FOR PLAINTIFF**

## **CERTIFICATE OF SERVICE**

On June 21, 2024, I electronically submitted the forgoing instrument with the clerk of the court for the U.S. District Court, Northern District of Texas, using the electronic case filing system of the court. I hereby certify that I have served all counsel of record electronically or by another manner authorized by Federal Rule Civil Procedure 5(b)(2).


/s/ Ali Crocker Russell
Ali Crocker Russell