UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF TEXAS
FORT WORTH DIVISION

**CYNTHIA BROOKINS,**

  Plaintiff,

v.                                          **No. 4:23-cv-00744-P**

**PETER P. BUTTIGIEG, U.S.
SECRETARY OF TRANSPORTATION,**

  Defendant.

### MEMORANDUM OPINION & ORDER

Before the Court is Defendant's Motion for Summary Judgment. ECF No. 19. Having considered the Motion, the Court concludes that it should be and is hereby **GRANTED**.

## BACKGROUND

This case arises from allegations of age discrimination by Plaintiff Cynthia Brookins against her former employer, the Federal Aviation Administration ("FAA"). Brookins was employed in the FAA's Flight Standards, Manufacturing Inspection Office in Fort Worth, Texas, from 2015 to 2022. Throughout her employment, Brookins received favorable performance reviews every year and was never disciplined, reprimanded, suspended, or dismissed. But Brookins alleges that during her tenure, her supervisor, Carlton Cochran, made several derogatory comments regarding her age. These comments included assertions that older employees were not "innovative" or "tech savvy" and did not learn as quickly as younger employees. Additionally, Cochran allegedly questioned Brookins about her retirement plans and suggested that the FAA preferred younger employees. Brookins claims that, because of her age, Cochran refused to promote her internally and cost her a job at another federal agency by providing a negative employment reference.

In May 2022, Brookins contacted an EEO counselor and the FAA investigated Brookins' allegations of age discrimination, issuing a 249-

page written investigation report. The FAA's Office of Civil Rights issued a Final Agency Decision in April 2023, finding no discrimination. Brookins subsequently filed this lawsuit on July 18, 2023, alleging age discrimination, retaliation, and hostile work environment. Brookins then amended her complaint, dropping her hostile work environment claim. The Government filed a Motion for Summary Judgment, which is now ripe for the Court's review.

## LEGAL STANDARD

Summary Judgment is appropriate when the moving party "shows that there is no genuine dispute as to any material fact" and "is entitled to judgment as a matter of law." FED. R. CIV. P. 55(a). A dispute is "genuine" if the evidence presented would allow a reasonable jury to return a verdict in favor of the non-moving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 242–43 (1986). A fact is "material" when it might affect the outcome of a case. *Id.* at 248. Generally, the "substantive law will identify which facts are material," and "[f]actual disputes that are irrelevant or unnecessary will not be counted." *Id.*

When determining whether summary judgment is appropriate, the Court views the evidence in the light most favorable to the nonmovant. *First Am. Title Ins. Co. v. Cont'l Cas. Co.*, 709 F.3d 1170, 1173 (5th Cir. 2013). In conducting its evaluation, the Court may rely on any admissible evidence available in the record but need only consider those materials cited by the parties. FED. R. CIV. P. 55(c)(1)–(3). The Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment; the burden falls on the moving party to simply show a lack of evidence supporting the nonmovant's case. *See Malacara v. Garber*, 353 F.3d 393, 404–05 (5th Cir. 2003).

## ANALYSIS

Brookins' Amended Complaint asserts two claims under the ADEA: (1) retaliation; and (2) disparate-treatment.[1] *See* ECF No. 10. The Government asks the Court to grant summary judgment on both claims. The Court will address each claim in turn.

### A. Retaliation

In 2019, Brookins' supervisor, Carlton Cochran, was interviewing for a position along with other candidates. *See* ECF No. 10 at 4. Brookins alleges that Cochran asked her to provide him with another candidate's interview notes in order to gain an advantage over other candidates. *See id.* Brookins confidentially reported Cochran for the request, and alleges that Cochran retaliated against her by increasing her work duties, refusing to promote her, and "providing inaccurate performance feedback to potential supervisors." *Id.* at 5. The Government argues Brookins' retaliation claim fails for three reasons: (1) Brookins failed to exhaust her administrative remedies; (2) the retaliation claim fails on the merits; and (3) Brookins recanted her retaliation claim during her deposition. *See* ECF No. 20 at 14–18. The Court finds that Brookins failed to exhaust her administrative remedies and will dismiss Brookins' retaliation claim.

Section 717 of the Civil Rights Act of 1964 permits most federal employees to seek relief from discriminatory employment practices in federal court. *See* 42 U.S.C. § 2000e-16(c), *Pacheco v. Mineta*, 448 F.3d 783, 787 (5th Cir. 2006). Before seeking judicial relief, however, employees must exhaust their administrative remedies by filing a charge of discrimination with the EEO division of their agency. *See id.* The scope of the exhaustion requirement balances two competing

---

[1] Although the Government's Motion originally sought summary judgment on Brookins' hostile work environment claim, *see* ECF No. 20 at 21, Brookins states in her Response that "Plaintiff filed her First Amended Complaint on September 11, 2023, removing her claims of hostile work environment and negligence hiring, supervising, training and retention." ECF No. 28 at 5. Accordingly, the Government acknowledged in its Reply that its Motion for Summary Judgment on that point is moot. *See* ECF No. 31 at 1. Thus, the Court will address Brookins' two remaining claims: retaliation and disparate treatment.

policies. On one hand, as most complaints are initiated *pro se*, the scope of an EEO complaint should be construed liberally. *Id.* (citing *Sanchez v. Standard Brands, Inc.,* 431 F.2d 455, 463 (5th Cir. 1970)). On the other hand, a primary purpose of the EEO process is to trigger investigatory and conciliatory procedures in attempt to achieve non-judicial resolution of employment discrimination claims. *See id.* at 788–89. Allowing claims well-beyond the scope of an EEO complaint to proceed in subsequent lawsuits would "circumvent the statutory scheme, since [it] clearly contemplates that no issue will be the subject of a civil action until the EEOC has first had the opportunity to attempt to obtain voluntary compliance." *Id.* at 789.

With that balance in mind, the claims an employee can bring in a lawsuit are limited to the scope of the EEO investigation which can "reasonably be expected to grow out of the charge of discrimination." *Madaki v. Am. Airlines, Inc.*, No. 4:21-CV-0760-P, 2022 WL 227163, at *2 (N.D. Tex. Jan. 25, 2022) (Pittman, J.). Courts look slightly beyond the four corners of an administrative charge, to its substance rather than its labels. *See Pacheco*, 448 F.3d at 789. In other words, a plaintiff's failure to check the right box on an administrative charge is not fatal to a claim that could reasonably be expected to grow out of the administrative charge. *See Sanchez*, 431 F.2d at 463 ("[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error.").

The Government argues that Brookins did not assert any retaliation claim during the administrative process, and a retaliation claim could not reasonably be expected to grow out of her charge of age discrimination. *See* ECF No. 20 at 16. Indeed, Brookins did not allege that she was experiencing retaliation in her intake interview with the EEO counselor. *See* ECF No. 21 at 123–29. Under "basis(es) for alleged discrimination," she did not check the box for "Reprisal," nor did she allege any facts to suggest she was retaliated against. *Id.* 124–25. And during her intake interview, Brookins' "claims and bases were reviewed and confirmed," with no mention of retaliation. *Id.*

Then, when Brookins submitted her formal complaint on August 11, 2022, she once again did not check the box for retaliation, nor did she

mention any facts that could support a retaliation claim. *Id.* at 115. And when Brookins received a letter notifying her that the EEO had accepted her claims for investigation, the letter explained that the only claims accepted for investigation were: "Whether Complainant was subject to discrimination and/or hostile work environment harassment (non-sexual) based on age . . . ." ECF No. 32-1 at 195–96. The letter further stated: "If you object to the articulation of the claims, you may submit a written statement for inclusion in the administrative file to DOCR_CMB@dot.gov." *Id.* at 196. Brookins elected not to add any claims of retaliation. *See* ECF No. 31 at 8. Thus, the EEO investigation did not encompass Brookins' allegation of retaliation.

Brookins argues that although she did not check the box for retaliation, "Plaintiff['s] affidavit and EEO investigation specifically discuss Plaintiff's retaliation claims," citing an affidavit Brookins submitted to the EEO investigator. ECF No. 28 at 15. Plaintiff's Response then states as follows:

> Throughout the entire EEO investigation, Plaintiff's assertions have been clear. Plaintiff has always alleged that Cochran has a history of interfering with employee interviews, meddling in other people's promotions and how offended Plaintiff has been at Cochran's agist comments. During the EEO interview, Plaintiff was asked to "explain how the management official coerced you into providing the notes from another job candidate's interview by specifically describing what the person did or said to you[.]". [T]o which, Plaintiff gave a lengthy description of Cochran's request for Plaintiff to give him notes for candidates interviews even though it was against FAA policies. Plaintiff further went into details about how she "contacted her previous manager, Caroll Dobbs[,]" and made a report about her concerns about Cochran asking her to do this as well as the complaints she had against him for his ageist comments. Therefore, the claim was reasonably expected to grow out of the EEO's investigation and Plaintiff sufficiently exhausted her administrative remedies allowing this matter to proceed in due course through litigation.

*Id.* at 15–16 (citations omitted).

Notably absent from this recount of Brookins' interview is any mention of retaliation. *See id.* And the Court is unable to divine a conceptual link between the events described and a retaliation claim

without inferring facts that were not alleged. Brookins' Response does not point to any statement in her affidavit suggesting that she experienced retaliation for reporting Cochran. *See id.* Although "the Court need not sift through the record to find evidence in support of the nonmovant's opposition to summary judgment," *Malacara v. Garber*, 353 F.3d at 404–05, the Court's own review of Brookins' affidavit similarly comes up empty. *See* ECF No. 29 at 130–46. Therefore, Brookins' retaliation claim could not reasonably be expected to grow out of the administrative charge. Accordingly, the Court concludes that Brookins did not exhaust her administrative remedies with respect to her retaliation claim.

### B. Disparate-Treatment

Next, the Government argues that Brookins' age-discrimination claim fails because she has not made a showing sufficient to establish an essential element of her case. *See* ECF No. 20 at 19. The Court agrees. To establish a prima facie case of discriminatory treatment based on age, a plaintiff must show: (1) they are within the protected class; (2) they are qualified for the position; (3) they suffered an adverse employment action; and (4) they were replaced by someone younger or treated less favorably than similarly situated younger employees (*i.e.,* suffered from disparate treatment because of membership in the protected class). *Leal v. McHugh*, 731 F.3d 405, 410–11 (5th Cir. 2013). A non-movant will not avoid summary judgment by presenting "speculation, improbable inferences, or unsubstantiated assertions." *Jones v. United States*, 936 F.3d 318, 321 (5th Cir. 2019). Rule 56 "mandates the entry of summary judgment against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case." *Id.*

Here, the Government argues Brookins has failed to establish she suffered an adverse employment action. *See* ECF No. 20 at 19–20; 31 at 15. In Brookins' Response, she alleges she "suffered [an] adverse employment action in the form of not receiving a promotion under Cochran due to her age. More specifically, Plaintiff applied for the position of Administrative Support Assistant in the Dallas Field Office of the FDIC in 2022 . . . and was passed up because of Cochran's agism."

ECF No. 28 at 11. The Government's Reply analyzes these as two separate alleged adverse employment actions: (1) Cochran's negative employment reference to the FDIC and (2) Cochran's interference with Brookins' ability to receive an internal promotion within the FAA. *See* ECF No. 31 at 15. Although Brookins' Response appears to exclusively discuss the FDIC negative employment reference saga—referring to the FDIC job as a "promotion"—the Court will liberally construe Brookins' Response as pointing to two separate adverse employment actions. Having reviewed the summary judgment record, both allegations appear to be based solely on speculation. The Court addresses each in turn.

*First*, Brookins alleges that Cochran gave a negative employment reference to the FDIC, which interfered with her ability to get that job. *See* ECF No. 10 at 5. In 2022, Brookins applied for a position at the Dallas Field Office of the FDIC. *See* ECF No. 10 at 5; 28 at 11. During the application process, the hiring manager, Vickie Conrad, informed Brookins that she would be contacting Cochran for a reference check, stating "I will probably be reaching out early next week." ECF No. 29 at 78. Brookins was later notified that she was not selected for the position, and she took this to mean that Cochran had provided a negative employment reference. *See* ECF No. 10 at 5. But Brookins' belief that Cochran provided a negative employment reference appears to be based entirely on speculation. *See* ECF No. 29 at 6–7 ("I am certain that [Cochran] told [Ms. Conrad] his concerns about my age . . . ."); *Id.* at 16 (email from Brookins to Ms. Conrad stating: "I have a feeling that [Cochran] didn't provide you with a fair/accurate opinion of me").

Both Ms. Conrad and Cochran maintain that they never communicated about an employment reference for Brookins. *See* ECF No. 21 at 12, 181. Ms. Conrad's sworn declaration states: "I never communicated with either of the two FAA managers that Ms. Brookins provided as references. No one at FAA provided any information to me on a reference check for Ms. Brookins." *Id.* at 12. In an interview, Cochran clarified that although Ms. Conrad reached out, they were never able to connect, stating: "I never talked to [Vickie Conrad]. Ms. Conrad called and left a message on my phone. I returned her call

subsequently leaving several messages and she did not return any of my calls. I never got to talk to her." *Id.* at 181. Thus, the record paints a clear and consistent picture of these events: Ms. Conrad told Brookins that she intended to reach out to Cochran for an employment reference, Ms. Conrad called Cochran and left a message, Cochran returned her call and left several messages, but Ms. Conrad never returned the calls and the two were never able to connect. Brookins is unable to provide *any* evidence to support her theory that Cochran gave her a negative employment reference other than the fact Ms. Conrad told Brookins she intended to reach out to Cochran and Brookins was ultimately not offered the job. *See* ECF No. 28 at 13. Therefore, the Court concludes that Brookins has not made a showing sufficient to establish that she suffered an adverse employment action.

*Second*, Brookins alleges that she "was not promoted" during her seven years under Cochran. *Id.* at 11. Brookins appears to allege that Cochran prevented her from receiving internal promotions within the FAA. *See* ECF No. 28 at 11. But the summary-judgment record and Brookins' own admission show that she was promoted twice during that period—in 2020 and 2022. *See* ECF No. 21 at 86 (a Notification of Personnel Action identifying Brookins as the recipient of a "promotion" in 2020), 175 (same in 2022); *see also id.* at 121 (Brookins' recounting that her colleague "congratulated me in my promotion" in 2022). Further, Brookins acknowledges that "[d]uring her seven years under Cochran, Plaintiff received a performance evaluation that commended her for her achievements and awarded her multiple pay increases based on her continued excellent work performance and output." ECF No. 28 at 11. And Brookins is unable to point to any specific internal promotion that Cochran prevented her from getting, or any action Cochran took to interfere with her opportunities for promotion. Indeed, when asked in her deposition whether Cochran prevented her from getting any jobs besides the FDIC job, Brookins said no. *See* ECF No. 21 at 53. While somewhat difficult to decipher, Brookins' Response simply recalls that Cochran "quizzed her about her retirement plans," and argues: "[w]hile Defendant states that Cochran did nothing to impede her ability to get a promotion, there exists a genuine question of fact exists [sic] in why

would Cochran promote Plaintiff if he wanted Plaintiff to retire?" ECF No. 28 at 12. That won't survive summary judgment.

Accordingly, as Brookins has not provided sufficient evidence to establish an essential element of her case, and because no genuine dispute of material fact exists, the Court **GRANTS** summary judgment in favor of the Government on her disparate-treatment claim.

## CONCLUSION

For these reasons, having considered Defendant's Motion for Summary Judgment, the summary judgment record, and the applicable law, the Court concludes that Defendant's Motion (ECF No. 19) should be and is hereby **GRANTED.** Accordingly, this case is **DISMISSED with prejudice.**

**SO ORDERED** on this **9th day of August 2024.**

Mark T. Pittman
UNITED STATES DISTRICT JUDGE

9